# STATE OF ILLINOIS,

### NOVEMBER TERM, 1859, AT MOUNT VERNON.

| 23 | 17 |
|----|----|
| 136 | 659 |

| 23 | 17 |
|----|----|
| 148 | 300 |
| 42a | 118 |

| 23 | 17 |
|----|----|
| 155 | 35 |

BERNARD H. SCHNIER, Plaintiff in Error, *v.* THE PEOPLE, Defendants in Error.

| 23 | 17 |
|----|----|
| 187 | ²246 |
| 187 | ³247 |

### ERROR TO CLINTON.

Where a jury is to be informed by the aid of an interpreter, the court may require the primary meaning of words used in connection with any significant word, to be given; so that the jury, in case of disagreement as to its proper signification, may determine the meaning which the party using the word, intended thereby.

It is for the jury to determine whether the circumstances surrounding a homicide were such as to induce a belief in the party committing it, if of reasonable mind, that the act was necessary to save his own life, or that of a wife or child.

A party accused of murder may show, in defense, that he committed the act under a belief, which was sufficient to satisfy a reasonable mind, that his own life, or that of a wife or child, were in immediate danger.

The jury, in a trial for murder, are judges of the law and the fact, not being bound by the opinion of the court.

THIS was an indictment for murder, found by the grand jury of Clinton county, at March term, 1859; tried at the August term, 1859. The defendant was found guilty of manslaughter by a jury, and sentenced to confinement in the penitentiary for eight years.

*Gerhardt Borchel*, a German, was sworn and examined through an interpreter. Witness lived with Theising in his lifetime; saw him at 11 o'clock on 3rd March, 1859, at the fence, when Schnier was throwing down the fence; it was Theising's fence; they were quarreling. I was half a forty acre tract away from them; the fence was between them; I could see

2

Theising clearly; Schnier's wife, son, and another young man, were there; Theising and Schnier were four or five feet apart; they were talking loud. I did not go from where I stood till Theising fell; I saw him fall; Schnier was standing closest to him at that time. They were on opposite sides of the fence, facing each other; Theising fell backward; he was facing Schnier when he fell; I could not see anything in Schnier's hand; I saw both Schnier and Theising when Theising fell. Went to where they were in a few minutes; Schnier and his wife were holding Theising up, and the blood was running out of his nose when I got there; Theising did not say a word; he could not speak, and died about five o'clock on same day. I did not see any weapon; there were round about Theising pieces of rails; after Theising died, I was at the fence; I saw a stake five or six feet long, standing loose at the fence; Schnier had pushed down ten or twelve pannels of fence; I could see Schnier prying the fence over with a rail or stake he had; did not see Schnier do anything with the stake but pry the fence with it. When I got to where they were, I asked what was doing; then I said, the last would be worse than the first. Schnier said, the stroke was rather hard, but he was sorry for it. (The German word used was " schlag," which was rendered *stroke* by the interpreter.) Did not know the feelings between Schnier and Theising, except that they had some quarrel about the fence. Theising threw a rail over to Schnier's side, where he was standing, but could not see whether he threw it at any one or not. "He had a rail in his hand, and was throwing it over, and fell backwards." When Theising threw the rail, they were standing face to face, and Theising fell back at the very instant he threw the rail. (The German word " schlag " means a fall as well as a blow.) Schnier was on his own land; can't say whether the rail thrown by Theising hit Schnier or anybody else.

Here the prosecution offered to prove, by the witness, his understanding of the meaning of the word *schlag* " as used by the defendant." Objection by defendant, which was overruled, and exception to the allowing the statement to be made by the witness was taken, and also the sense in which he used the word " schlag " in his testimony.

The prosecution proved by *H. Hughler*, that defendant told him he had struck Theising on the arm, but did not think it would have hurt him so that he would die; defendant asked him to take some whisky; he took a drink and went off; this was at Schnier's house; I did not see the dead body; Schnier said it was of no use.

The defendant then offered to prove, by a German, that the

German word " schlag " means a *fall* more frequently than a *blow*, but the court, upon objection, ruled the evidence incompetent.

The defendant offered to prove by an expert in the German tongue, the meaning of the German word " schlag," as used by the defendant when speaking to the witness Borchel, which was ruled to be incompetent, and exception taken. Defendant proved his good character for peaceableness, and for years past, by a large number of witnesses.

The defendant proved, by one of the grand jurors who found the bill of indictment a true bill, that one Schutte, who was a witness in the case before the said jury, said that Schnier had nothing in his hand during the time of the quarrel.

The court, O'MELVENY, Judge, presiding, on the part of the people, instructed the jury as follows :

Murder is the unlawful killing of a human being, in the peace of the people, with malice aforethought, either express or implied by law.

Malice includes not only anger, hatred and revenge, but every other unlawful and unjustifiable motive. Malice is not confined to ill-will toward an individual, but is intended to denote an action flowing from any wicked and corrupt motive—a thing done with a wicked mind, where the fact has been attended with such circumstances as evince plain indications of a heart regardless of social duty, and fatally bent on mischief. Hence malice is implied from any deliberate or cruel act against another, however sudden, which shows an abandoned and malignant heart.

If the jury shall find, from the evidence, that the killing of Benedict Theising has been proved as charged, then in any defense which the defendant may rely upon in justification or excuse of the act, or to reduce the killing to the grade of manslaughter, it is incumbent on the defendant satisfactorily to establish such defense either by proof arising out of the evidence produced against him, or by introducing proof in his own behalf; and if the defendant has failed to establish satisfactorily any such defense, the killing being proved, the verdict must be, guilty of murder.

The court further instructs the jury, that when one person kills another with a deadly weapon, no words of reproach or gesture, however irritating or provoking, amount to a considerable provocation in law ; and where one person unlawfully kills another by striking him a blow with a deadly and dangerous weapon, where no considerable provocation appears, or provocation apparently sufficient to excite irresistible passion, the law makes such killing murder.

The court instructs the jury, that if, without adequate provocation, and without such provocation as is apparently sufficient to excite irresistible passion, a person strikes another with a deadly weapon likely to occasion death, although he had no previous malice against the party, yet he is to be presumed to have had such malice at the moment, from the circumstances, and is guilty of murder.

The law presumes that a person intends all the natural, probable and usual consequences of his acts; that when one person assails another violently with a dangerous weapon likely to kill, not in self-defense, and not in a sudden heat of passion, caused by a provocation apparently sufficient to make the passion irresistible or involuntary, and the life of the party thus assailed is actually destroyed in consequence, the legal and natural presumption is, that death or great bodily injury was intended, in which case the law implies malice, and such killing would be murder.

If the jury believe, from the evidence, that the defendant was in the commission of an unlawful act against the property of Benedict Theising at the time of the difficulty between the prisoner and Theising, which terminated in said Theising's death, and that said difficulty was by defendant's procurement, and that during said difficulty defendant struck said Theising with a deadly weapon, inflicting injuries upon said Theising as charged, then it must appear either that defendant in good faith declined any further difficulty with Theising, or that said blow, if you believe it was inflicted by defendant, was inflicted in necessary self-defense, or in defense of his wife or son, and if such does not appear, then the verdict should be, guilty of murder.

If the jury believe, from the evidence, that on or about the third day of March last, in the county of Clinton, the defendant and deceased met at a certain fence, and a quarrel ensued between them, and that defendant then and there struck deceased a blow on the head with a dangerous and deadly weapon, as charged, without any considerable provocation, or such provocation as was apparently sufficient to excite sudden or irresistible passion, and that on the same day deceased, from the effects of said blow, so inflicted, died, then the jury should find the defendant guilty of murder.

12. If, after a due and proper consideration of all the facts and circumstances in evidence before you, you shall believe defendant not guilty of murder, then you should consider whether the defendant is guilty of the crime of manslaughter; and if you shall believe, from a view and consideration of all the facts and circumstances in evidence, that the defendant is guilty of manslaughter, then you should so find, and fix by your verdict the term for

which he shall be confined in the penitentiary, at any length of time not less than one year nor more than during his natural life.

13. Manslaughter is the unlawful killing of a human being, without malice express or implied, and without any mixture of deliberation whatever. It must be voluntary, upon a sudden heat of passion caused by a provocation apparently sufficient to make the passion irresistible, or involuntary in the commission of an unlawful act, or a lawful act without due caution or circumspection. In cases of voluntary manslaughter, there must be a serious and highly provoking injury inflicted upon the person killing, sufficient to excite an irresistible passion in a reasonble person, or an attempt, by the person killed, to commit a serious personal injury on the person killing, his wife or son. The killing must be the result of that sudden, violent impulse of passion, sufficient to be irresistible. For if there appears to have been an interval between the assault or provocation given and the killing, sufficient for the voice of reason and humanity to be heard, the killing shall be attributed to deliberate revenge, and punished as murder.

14. Involuntary manslaughter consists in the killing of a human being, without any intent so to do, in the commission of an unlawful act, which might produce such a consequence, in an unlawful manner, provided always where such an involuntary killing shall happen in the commission of an unlawful act, which in its consequences naturally tends to destroy the life of a human being, or is committed in the prosecution of a felonious intent, the offense shall be deemed and adjudged to be murder.

15. To extenuate the unlawful killing or homicide from the crime of murder to manslaughter, two facts must concur : there must appear to be both provocation and passion. Provocation without passion will not extenuate, nor will passion merely, without provocation, reduce the unlawful killing from murder to manslaughter.

16. No breach of a man's word or promise, no trespass to his lands or goods, no affront by bare words or gestures, however false or malicious, and aggravated with the most provoking circumstances, will free the party from the guilt of murder, when the party killing makes use of a deadly and dangerous weapon, or otherwise manifests an intention to kill or to do some great bodily harm ; but the provocation which the law requires and regards as sufficient to extenuate homicide from murder to manslaughter, must, in general, be an assault upon the party killing. It must be an offer to effect violence upon the party killing. Where one man attempts or offers to strike or beat another, and that other should then, without malice, and under the influence of passion caused by the provocation, strike

a blow which results in the death of the assailant, the killing would be manslaughter, under such circumstances.

17. The court instructs the jury, that the law conclusively presumes that every sane man intends or contemplates the natural and probable consequences of his own acts, and that therefore the intent to murder is conclusively inferred from the deliberate use of a deadly weapon. In this case it is the duty of the jury to consider all the facts and circumstances in evidence before them, and if, from such consideration, they are satisfied, beyond a reasonable doubt, that the defendant unlawfully killed Theising with a dangerous or deadly weapon, where no considerable provocation appeared for such killing, the defendant is guilty of murder.

18. That while the law recognizes the right of self-defense, where one party is assaulted by another, and also recognizes the right of a father to interfere in defense of his child, yet a bare fear of being assailed will not justify one man in taking the life of another.

19. The true rule of law upon the principle of self-defense of person is this: Where a man who, in the lawful pursuit of his business, is attacked, and where, from the nature of the attack, there is reasonable ground to believe there is a design to destroy his life, or to commit any felony upon his person, the killing of the assailant, under such circumstances, will be excusable or justifiable homicide, although it should afterward appear that no felony or real danger was intended. Upon this rule of the law of self-defense, before a party can be acquitted of the crime of murder or manslaughter, where the evidence proves a homicide, the jury must be satisfied from the evidence, 1st, that the accused was attacked by the deceased, or that his child, or wife, or servant, was attacked by the deceased; 2nd, the attack must be made with a deadly weapon, or under such circumstances as were calculated to raise a reasonable apprehension of death, or of receiving great bodily harm; 3rd, that the party killing killed the assailant in order to save his own life, or that of his child, wife or servant, or to prevent his own person, or that of his child, wife or servant, from receiving great bodily harm. If the jury believe, from the evidence, that the defendant, his son, and John Schutte, were engaged in removing a fence erected by Theising, and that while they were so engaged, the deceased came up to them, and a quarrel ensued, and the deceased man picked up a piece of rail and threw it over to the opposite side of the fence, remarking that " you have got my fence, here, take the balance," and did not attack or assault, or attempt to commit any violence upon the person of the defendant, nor upon the defendant's son or wife, and the circumstances attending the

throwing over the fence of a rail, were not calculated to induce a reasonable and well grounded apprehension that his life or person, or that of his son or wife, was in imminent danger of death, or of great bodily harm, at the hands of Theising, then you cannot acquit the defendant on the grounds of justification.

20. The true test of self-defense is, was the defendant, or his son, or his wife, or his servant, attacked by the deceased man in such a manner and under such circumstances as were calculated to raise in the defendant's mind a reasonable and well grounded belief that he, or his son, or his wife, or his servant, were in imminent danger of life, or of great bodily harm? The danger must be real, or apparent, imminent and pressing, and not merely imaginary or existing in machination; for unless there be some overt act apparently indicating the design to take the life of the defendant, or that of his son, wife or servant, or to do one or all of them great bodily harm, he was not justified in taking the life of Benedict Theising.

21. If a man kill another through mere cowardice, or under circumstances which are not, in the opinion of the jury, sufficient to induce a reasonable and well grounded belief of imminent danger to life, or of great bodily harm, the law will not justify the party killing.

22. But upon the ground of justifiable homicide, or the principles of self-defense, the court further charges you, that even although you should believe that Theising attacked the defendant, or his son, still if you believe, from the evidence in this case, the party assailed could have escaped his adversary's vengeance, at the time of the attack, without the killing of Theising, the defense of justification or self-defense has failed, and the defendant cannot be acquitted upon the law of self-defense.

23. The court further instructs you, that if a man, for the purpose of bringing another into a quarrel, provoke him so that an affray is commenced, and the person causing the quarrel is overmatched, and to save himself from apparent danger, he kills his adversary, he will be guilty at least of the crime of manslaughter if not of murder; because, the necessity being of his own creating, shall not operate in his excuse.

24. That if you believe, from a view of all the evidence, that Theising did not assault the defendant, nor his son, nor his wife, then the defendant cannot be acquitted on the ground of self-defense.

The defendant requested the court to give the following instructions:

1. That no homicide is murder unless it be committed with malice aforethought, which malice aforethought is either express

or implied. Malice express is where the killing is done by a person who, before the killing, has threatened the deceased with great bodily harm, and in like cases. Malice implied is where the accused person shoots into a crowd of people and kills a human being in that way, and in all such cases which show the accused fatally bent on mischief in the prosecution of the fatal act, or where there is no considerable provocation by the party killed, or where all the circumstances of the killing show an abandoned and malignant heart.

2. Manslaughter is the unlawful killing of a human being without malice, either express or implied. It is voluntary or involuntary. Voluntary upon a provocation apparently sufficient to excite irresistible passion, or involuntary in the doing of an unlawful act, or a lawful act without due caution or circumspection.

3. Malice will not be implied when the act which produces death is common and usual, and not manifestly calculated to produce death or great bodily harm.

4. The court instructs you, that if there be any other reasonable hypothesis arising out of the evidence given in this cause than that the defendant unlawfully killed Theising, the defendant is entitled to the benefit of such hypothesis and ought to be acquitted.

5. You cannot find the defendant guilty of unlawfully killing the deceased, Theising, upon a preponderance of evidence, but you must be satisfied beyond a reasonable doubt, from the evidence given to you by witnesses who have been sworn and examined in this cause, that the defendant unlawfully and feloniously killed and slew the said deceased, otherwise you ought to find a verdict of not guilty.

6. The court instructs the jury, that unless they believe, from the evidence, all the material allegations in the indictment are proved beyond any reasonable doubt, they ought to find the defendant not guilty.

7. The court instructs the jury, that they must have convincing proof of the guilt of the defendant before they can find him guilty; and if there be any reasonable hypothesis, consistent with the evidence in the cause, upon which he may be innocent, they ought to find him not guilty.

8. The court instructs the jury, that it is not enough that they believe, from the evidence, that it is more probable that the defendant killed the deceased as charged in the indictment, than that he died from some other cause; that they must be satisfied beyond a reasonable doubt, from all the testimony, that he is guilty as charged in the indictment, or else they ought not to find him guilty.

9. The court instructs you, that an assault is an unlawful attempt coupled with a present ability to commit a violent injury upon the person of another, and that if you believe, from the evidence in this cause, that the deceased assaulted the defendant with a rail or stake, and that the defendant thereupon killed the deceased [here the court inserted the words, "without malice,"] under the honest belief [however erroneous] that he was in imminent danger of losing his life, or of receiving great bodily harm, at the hands of the deceased, [here the court inserted these words, "and that he had not the opportunity of retreat consistent with his personal safety,"] you ought to find a verdict of not guilty.

10. The court instructs you, that if you believe, from the evidence, that the deceased, Theising, struck with, or threw, a rail or stake at the defendant, Schnier, and within the distance to strike with or hit by throwing, and that the defendant, Schnier, thereupon killed the deceased, [the court here inserted the words, "without malice,"] under the honest belief, however erroneous it may have been, that he was in imminent danger [here the court inserted the words, "at the time,"] of losing his life, or of receiving great bodily harm, from the striking or throwing as aforesaid, [here the court inserted the words, "and retreat was inconsistent with his personal safety,"] then you ought to find a verdict of not guilty.

11. The court instructs you, that evidence must show that the death of Theising was caused by a blow as described in the indictment and proved by the evidence in the cause, and unless you believe, from the evidence, that the defendant inflicted a blow on the head of the deceased and thereby killed him, your verdict should be, not guilty.

12. In all criminal cases, and particularly charges of murder or manslaughter, then the law presumes that the defendant is innocent, and so the jury must regard him, unless it is clearly proved, [here the court inserted these words, "in manner and form as charged in the indictment,"] beyond all reasonable doubt, that he is guilty.

13. The court instructs the jury, that if they believe, from the evidence, beyond a reasonable doubt, that the defendant struck and killed the deceased, yet if the deceased struck at or hit him with a rail or stake or any other missile, and was in striking or throwing distance, and thereby [here the court inserted the words, "and by such means,"] produced a reasonable and well grounded belief in the mind of the defendant that he was in imminent danger of receiving great bodily harm from the deceased, [here the court inserted the words, "and that

retreat was inconsistent with his personal safety,"] then he was justified under the law, and must be found not guilty.

14.   The court instructs you, that the confessions of a party are weak [here the court struck out the words, " the weakest of all," and inserted the above words, " are weak,"] evidence unless made in open court, and with full knowledge of the use that is to be made of them, [the court here inserted, " or unless corroborated by other evidence,"] and if you believe, from the evidence, that the defendant has made any casual statements in relation to striking the deceased, they are of the least weight as evidence in this cause, unless corroborated by independent evidence.

15.   The court charges you, that the law of self-defense is applied to the domestic relations, such as husband and wife, parent and child, master and servant, and if you believe, from the evidence in this cause, that the deceased, Theising, threw a rail at the wife or son of the defendant, in such a way as to create in the mind of the defendant an honest fear [here the court inserted the words, " belief and," between the words honest and fear,] that either the wife or son was in imminent danger [here the court inserted, " so imminent that retreat was apparently inconsistent with personal safety,"] of losing his or her life by the hands of Theising, and that under the influence of that fear, he immediately killed Theising, the killing was lawful, and you ought to acquit the defendant.

16.   The court instructed the jury that they could not weigh the evidence and find defendant guilty upon a preponderance of evidence.

18.   The court instructs you, that you are the judges of the law and the facts of this cause, and that you are not bound by the opinion of this court as to what the law is.

Exceptions were taken by prisoner to the modification of his instructions asked.

Davis & Sparks, for Plaintiff in Error.

Watts & Tanner, for The People.

Walker, J.   On the trial of this cause in the court below, Gerhardt Borchel was sworn and examined through an interpreter, he not being able to speak the English language.   This witness testified that when he got to the place where the occurrence had taken place, that plaintiff in error and his wife were holding deceased up, and the blood was running from his nose, and he was unable to speak.   Witness inquired what was doing,

when Schnier replied, " the stroke was rather hard, but he was sorry for it." The prosecution then proved by the witness his understanding of the German word " schlag" as used by plaintiff in error, and also the sense in which witness used the word in his testimony. This evidence was received by the court, against the objection of the accused. The defendant then offered to prove by a German, C. H. Githous, that the German word " schlag," means a fall more frequently than a blow, but the court rejected the evidence. The defendant then offered to prove by a German scholar the meaning of the German word " schlag " as used by accused when speaking to the witness Borchel, which the court held to be incompetent and it was rejected, to which the accused excepted.

The object of all evidence is to inform the jury or tribunal to whom the issue is submitted, of all the facts in dispute, precisely as they occurred. The nearer that tribunal can, through the aid of evidence, become eye and ear witnesses of the transaction, the nearer will they be enabled to do strict justice between the parties. Hence witnesses are required to detail what the parties did and said. And in detailing conversations, or admissions, the rules of evidence require that as far as practicable the language employed by the party, should be detailed by the witness. It is by this means that the jury or court trying the issue, is enabled to arrive at the intention of the party employing the language. When the language used by the party, and testified to by the witness, is understood by the triers, they can have no difficulty in arriving at the meaning attached to it by the person using it. But to do so, it is always desirable that the witness shall as far as possible detail to the jury the very same language, in precisely the same connection, in which it was employed by the person using it, otherwise, it will necessarily be merely an accident if the jury obtain the sense in which it was spoken. When the facts, conversations or admissions, admissible in evidence, are known to a person who does not understand and speak the language in which the trial is conducted, then the only means by which the jury or court trying the issue can arrive at the facts, is from the evidence through an interpreter who understands and speaks both languages. And when he is so employed, it is his duty to translate the evidence given by the witness into equivalent terms of the language employed by the tribunal trying the cause. All persons are aware of the fact, that the power to make a literal translation from one language to another, so as to preserve in the translation the precise meaning of the original, depends upon an accurate knowledge of both languages by the translator. This being the office of an interpreter, if the person employed is not well

versed in each language, he is liable to fail in giving the jury the facts, circumstances, conversations and admissions just as they were detailed by the witness, and if that is not done, the party against whom the mistake is made must suffer wrong, unless he shall be permitted to call others who are more capable of translating the language accurately. This we think is the right of the party. It cannot be the law that because an interpreter is called who is not capable of correctly translating the evidence, or from bias or partiality renders it incorrectly, that parties must be bound by it although it may affect their most vital and important rights. In this case the witness was permitted to testify as to the sense in which he understood the accused to employ this term, and we can perceive no objection in permitting the accused to introduce evidence of the primary meaning of the word; and its meaning in the connection in which it was used. In all cases of such disputes, as to the meaning of a word in the foreign language, it would be proper that the court require the interpreter to give the primary meaning of all words used in connection with the word in dispute, that the jury might be enabled to determine its meaning in case of disagreement of the interpreters.

The prosecution asked and the court gave, against the objection of the accused, this instruction, "If the jury believe, from the evidence, that the defendant was in the commission of an unlawful act against the property of Benedict Theising at the time of the difficulty between the prisoner and Theising, which terminated in said Theising's death, and that said difficulty was by defendant's procurement, and that during said difficulty defendant struck said Theising with a deadly weapon, inflicting injuries upon said Theising as charged, then it must appear either that defendant in good faith declined any further difficulty with Theising, or that said blow, if you believe it was inflicted by defendant, was inflicted in necessary self-defense, or in defense of his wife or son, and if such does not appear, then the verdict should be, guilty of murder." This instruction is liable to the construction that before the accused would be justified in the infliction of the blow, that it should have been necessary for his self-preservation. It has been held by this court ( *Campbell* v. *The People*, 16 Ill. R. 18,) that the necessity for taking the life of the deceased need not be real and absolute, but if the necessity is so apparent as to induce the belief in a reasonable mind, that the danger was so imminent that no other means of escape existed but to take the life of deceased in order to preserve that of the accused, that such apparent danger will justify the homicide. It is not to be expected, nor can it be required of men menaced with apparent imminent and unavoidable danger, that

they will act with that deliberation, and cool circumspection that men do under ordinary circumstances. They cannot be expected to resort to and fully test every means that may remotely promise safety, but at the same time they must be held to employ all means for their escape, that to a reasonable understanding would seem to promise safety, before they can be justified in slaying their antagonist. But if the danger seems to be so imminent and pressing, as to a reasonable mind would seem under the circumstances to afford no other mode of escape, then the slaying would be justified, although the danger was only apparent. Under this instruction the jury may have reasonably inferred, that there could be no justification unless the necessity to destroy life in self-defense, was actual and not apparent, although regarded sufficient by all reasonable understandings. This instruction should have been so modified as to leave it to the jury to say, whether the circumstances surrounding the transaction were such as to induce a belief of its necessity in a reasonable mind, and whether the accused acted upon such a belief, and failing to do so, it was erroneous.

The court announce as the law the same rule, in the People's twenty-second instruction, and it is there so clearly announced that the jury could not fail to so understand it, and the presumption is that they regarded and acted upon it, in forming their verdict. It, like the *tenth instruction,* and for the same reasons, was erroneous, and should have been modified before it was given. The same rule is adopted in the tenth and thirteenth instructions asked by defendant, and they were therefore erroneous.

The defendant also asked and the court refused to give this instruction, " The court instructs you that you are the judges of the law and the facts of this case, and that you are not bound by the opinion of the court as to what the law is." This instruction, a majority of the court think, should have been given. They are of opinion that if the statute means what it says, that the jury shall be the judges of the law as well as the fact, the last member of the instruction follows as a necessary conclusion from the principle thus enacted. In civil cases the jury are only judges of the facts, to which they must apply the law as they receive it from the court. That the design of this enactment, was to enlarge the powers of the jury so as to allow them to judge of the law also, as applicable to the facts. If the statute gives them the power to judge of the law—in the exercise of that power, they must have the right to say whether any given proposition is law or not. In order to form correct conclusions as to what is the law as applicable to the facts, it is proper and usual, and even the duty of the court, if requested

by either party or by the jury, to instruct them what the law is, but it was the design of the statute that they should not be absolutely bound by such instruction. If they can say upon their oaths that they know the law better than the court does, they have the right to do so, but before assuming so solemn a responsibility, they should be sure that they are not acting from caprice or prejudice, that they are not controlled by their will or their wishes, but from a deep and confident conviction that the court is wrong and that they are right. Before saying this upon their oaths it is their duty to reflect, whether from their habits of thought, their study and experience, they are better qualified to judge of the law than the court. If under all these circumstances, they are prepared to say that the court is wrong in its exposition of the law, the statute has given them that right.

This I say is the view entertained by the majority of the court as to this instruction, but to which I am unable to assent, believing as I do, that the jury are bound to receive the law as expounded by the court, and only have the right to judge of its proper application to the facts appearing in evidence. This provision of the law I conceive must be confined to the law relating to and creating the crime itself, as announced by the court, as applicable to the facts proved. But I deem it unnecessary upon this occasion to give my views in full, but shall avail myself of any future occasion which may present itself for that purpose.

The judgment of the court below is reversed, and the cause remanded for a new trial not inconsistent with this opinion.

*Judgment reversed.*