# WILLIAM ADAMS

## *v.*

## THE PEOPLE OF THE STATE OF ILLINOIS.

1. CRIMINAL LAW—*jury judges of the law and fact.* Under our statute, juries in criminal cases are judges of the law, as well as of the fact, and they have the right to pronounce upon the law, as it may seem in their opinion to be.

2. SAME—*self-defense.* While the doctrine is, that a man, threatened with danger, must determine from appearances, and the actual state of things surrounding him, as to the necessity of resorting to self defense, and if he acts from reasonable and honest convictions, he will not be held responsible, criminally, for a mistake as to the extent of the actual danger, where other judicious men would have been alike mistaken ; at the same time, he has not the right to provoke a quarrel and take advantage of it, and then justify the killing of the party with whom he has provoked the quarrel.

3. SAME—*of threats by deceased.* Where a party on trial upon the charge of murder, defends upon the ground that he acted in self-defense, evidence that the deceased had a bowie knife inside of his coat only a short time before the killing, and that he declared he would cut the accused's heart out with it, would have no weight with the jury, it not being shown the prisoner knew the fact, or acted upon the suspicion of its existence, and it appearing the deceased had no evil designs toward the accused, but rather that the latter sought the difficulty in which the killing occurred.

4. SAME—*of exculpation of the accused by the deceased.* And in such a case, the dying declaration of the deceased, that he did not wish the accused hurt for what he had done, and that accused had done nearly right, affords no evidence of anything more than a christian spirit of forgiveness toward one who had done him great wrong, and a new trial would not be granted for the purpose of enabling the accused to prove such declaration, upon the ground that it was newly discovered evidence.

5. NEW TRIAL—*newly discovered evidence.* A new trial will not be granted merely to afford a party an opportunity to introduce newly discovered testimony, which is not conclusive in its character, but only cumulative, and the rule is the same in criminal cases.

6. SAME—*for misconduct of the jury.* It is the duty of an officer in charge of a jury in a criminal case, when at their meals or sleeping, to keep them entirely removed from the company of others. It is indiscreet to permit them, during a meal or when in their lodging room, to be in company with others; but unless it is clearly shown they were, by such exposure, operated on in some way to the prejudice of the prisoner, a judgment of conviction will not, for that cause alone, be reversed.

WRIT OF ERROR to the Circuit Court of Crawford County; the Hon. H. B. DECIUS, Judge, presiding.

The facts fully appear in the opinion.

Mr. J. C. ALLEN and Mr. E. CALLAHAN, for the plaintiff in error.

Mr. ROBERT G. INGERSOLL, Attorney General, for the people.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

This was an indictment, in the Crawford Circuit Court, of William Adams, for the murder of Thomas Bostic. The jury found the prisoner guilty of manslaughter, and fixed the term of his imprisonment in the penitentiary at ten years.

A motion for a new trial was made by the prisoner, based on his own affidavit, and that of two other persons, alleging

48—47TH ILL.

misconduct of the jury, and on the further ground of newly discovered evidence.

The court denied the motion, and rendered judgment on the verdict, and the cause is brought here by writ of error.

The points made here by the prisoner's counsel are, the modification, by the court, of prisoner's third instruction, and giving the twelfth and twentieth instructions on behalf of the people, and in refusing to give the prisoner's thirteenth and last instruction.

As to this last instruction, it was properly refused, as it had nothing to do with the case; it was wholly irrelevant, and the jury were not in a position to know what the decisions of the supreme court had been on questions of law. Whether final or not, was no concern of the jury in the particular case they were trying, nor were these decisions, multitudinous as they are, before the jury by the testimony, as it appears on the record. Under our statute, juries in criminal cases are the judges of the law as well as of the fact, and they have a right to pronounce on the law as it may seem in their opinion to be, as this court decided in *Schnier* v. *The People*, 23 Ill. 17, and *Fisher* v. *The People*, 23 ib. 283.

The third instruction of defendant, as asked, was as follows:

If the jury believe, from the evidence, that at the time Adams struck the blow or blows, that resulted in the death of Bostic, he, Adams, had reasonable grounds to believe that the killing of Bostic was necessary to save his own life, or to protect himself from great bodily harm, then the killing was justifiable, and the jury should find the defendant not guilty.

The court qualified this instruction, and it is alleged as error, by adding as follows: "Unless the jury further believe that the difficulty was commenced by the defendant for the purpose of taking the life of Bostic, or inflicting upon him a bodily harm."

The objection to this qualification is made upon the assertion by the accused, that there was no evidence that he made

an assault or commenced a difficulty with the deceased for the purpose of taking his life or doing him bodily harm, or for any other purpose.

Colliflower, the principal witness for the prosecution, stated in his testimony that he saw the whole transaction, and from his testimony, the jury might well infer the accused sought the difficulty with the deceased. While the doctrine is, as established by this court, in *Schnier* v. *The People, supra.*; *Maher* v. *The People*, 24 ib. 242, and *Canfield* v. *The People*, 16 ib. 17, that a man threatened with danger must determine from appearances and the actual state of things surrounding him, as to the necessity of resorting to self-defense, and if he acts from reasonable and honest convictions, he will not be held responsible, criminally, for a mistake as to the extent of the actual danger, where other judicious men would have been alike mistaken, at the same time, he has not the right to p - voke the quarrel and take advantage of it, and then justify the homicide. This was the extent and purport of the qualification, and was entirely proper. For these reasons, the twelfth instruction for the people was right. It was as follows : If the defendant sought a difficulty with the deceased for the purpose of killing him, and in the fight did kill him, in pursuance of his malicious intention of taking the life of Bostic, they will find him guilty of murder, but if they find that defendant voluntarily got into the difficulty or fight with Bostic, but did not intend to kill at the time, and did not decline further fighting before the mortal blow was struck by him, and then drew his knife and with it struck and killed Bostic, they will find the defendant guilty of manslaughter, although the cutting and killing were done in order to prevent an assault upon him by Bostic, or to prevent Bostic from getting the advantage in the fight.

And the twentieth instruction was also proper. It was as follows : The defendant cannot avail himself of necessary self-defense, if the necessity of that defense was brought on

by the deliberate and lawless acts of the defendant, or his bantering Bostic to a fight for the purpose of taking his life, or committing a bodily harm upon him, and in which he killed Bostic by the use of a deadly weapon.

Upon the point of newly discovered evidence, as a ground for a new trial, the doctrine has been settled in this court, that a verdict will not be set aside merely to afford the defendant an opportunity of introducing newly discovered testimony which is not conclusive in its character, or is merely cumulative. *Smith* v. *Shultz*, 1 Scam. 490; *Morrison* v. *Stewart*, 24 Ill. 25. And the rule is the same in criminal cases.

We see nothing conclusive of any fact in any portion of the newly discovered testimony—it is merely cumulative. Threats of a similar kind were spoken of by several witnesses, and the accused had the full benefit of them. The dying declaration of Bostic, that he did not wish the accused hurt for what he had done, and that accused had done nearly right, etc., affords no evidence of anything more than a truly christian spirit on the part of one who had been unjustly done to death, and who, in his dying agonies, was willing to forgive the malefactor. The further statement, that he knocked down the accused three times before the accused touched him, was substantially before the jury on the trial. The proof is clear, that when deceased, the woman and Suthard approached the wagon in which was the accused, he jumped out and went toward the deceased, for what purpose was to be inferred by the jury from the sequel. The deceased knocked him down twice before the accused actually touched him, but he was advancing upon the deceased in a menacing manner, with his knife, in all probability, ready, but concealed for the expected emergency. The deceased did not follow up the advantages he had gained, but seemed desirous of avoiding a collision.

The testimony of Samuel Jacobs, that deceased had a bowie knife inside of his coat only a short time before the killing,

and his declaration, that he would cut the accused's heart out with it, could have had no weight with the jury, if it had been before them, for it is not shown the prisoner knew the fact, or acted upon the suspicion of its existence. The evidence goes to show, most clearly, that the deceased had no evil designs toward the accused, for if he had, a most favorable opportunity existed for him to carry them out after he had knocked the accused down, and had him completely in his power.

The testimony, we think, fully sustains the finding of the jury, and it could not have been different had all the evidence, alleged to be newly discovered, been before them.

The remaining point is the misconduct of the jury. It is alleged they were allowed to hear expressions and opinions in regard to the trial from divers persons, on the streets and at the hotel; that one of the jurors, before the trial was closed, expressed an opinion that the accused was guilty, and should be in the penitentiary, and that the jury discussed the merits of the case among themselves, before the argument of counsel had closed.

It may be, the officers in charge of the jury were not sufficiently cautious and circumspect, when they conducted the jury to the hotel for refreshments, but it does not appear from the affidavits *pro* and *con*, read on this point, the jury were influenced in the slightest degree by the casual conversation they might have heard at the hotel, and it is not proved they heard any thing prejudicial to the prisoner, or that they discussed the merits before the cause was closed; and it is not shown that the jury were at any time separate and out of the control of the officer in charge. It certainly was the duty of the officers to keep the jury, when at their meals or sleeping, entirely removed from the company of others. They should eat by themselves, and sleep with none present but the officers in charge. *Jumpertz* v. *The People*, 21 Ill. 406. It was indiscreet, to permit them, during a meal or when in their lodging room, to be in company with others, but unless it is clearly

HARVARD LAW SCHOOL LIBRARY

shown they were, by such exposure, operated on in some way, to the prejudice of the prisoner, we do not think a verdict, for that cause alone, should be set aside. That, with other causes, would have weight, but of itself could not influence the judgment of the court to disturb a verdict, when from the whole record, it appears justice has been done.

We cannot perceive that any rule of law has been violated by the circuit court to the prejudice of the prisoner. He has had a fair trial by a jury of his neighbors, and though we might not have found on the facts as they did, we cannot say their finding is so against the evidence as to justify interference by this court.

The judgment must be affirmed.

*Judgment affirmed.*