PETER DAVISON

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

1. GRAND JUROR—*age, as a disqualification.* The fact that a grand juror is over the age of sixty years, does not disqualify him from acting: It is only a privilege for which he may claim to be excused.

2. SAME—*non-residence.* Alienage is not a disqualification to a juror, even in a capital case, but is only a privilege or ground of challenge. So the fact that a grand juror was a resident of another State at the time an indictment was found affords no ground of disqualification.

3. IMPEACHING A VERDICT—*of the proof required.* Where the examination of a juror on his *voir dire* shows him to be competent, a new trial will not be granted in a criminal case on affidavits showing the expression of his opinion of the prisoner's guilt, where the counter affidavits are such that the court is not satisfied the juror swore falsely on his examination, or was disqualified.

Syllabus.

To show that a juror has sworn falsely on his *voir dire*, the evidence must clearly preponderate in establishing that fact.

4. EVIDENCE IN CRIMINAL CASES—*res gestæ.* On the trial of one for murder in shooting one who was one of the commissioners of highways, while attempting to remove the defendant's fence, evidence that the place where the fence was situated was not a public highway, is not admissible in evidence as a part of the *res gestæ* on the part of the defense, when the alleged vacation of the road, if there was one, was a long time prior to the killing. The fact that there was a dispute as to whether there was a road there or not at the time, would explain the motives and feelings of the accused.

5. SAME — *cross-examination.* A cross-examination of a witness must be kept within fair and reasonable limits, and is, to some extent, discretionary with the judge trying the case. There is no error in refusing questions respecting conversations previous to the day of a homicide, respecting the subject of the dispute out of which the difficulty grew. If the witness has bad feelings towards the accused, the question can be asked as to that fact directly, without going into prior conversations to show it.

6. CRIMINAL LAW—*malice—when implied.* Malice is always presumed where one person deliberately injures another. If a person deliberately uses a deadly weapon on another, resulting in his death, it must be inferred that the killing was malicious. If there was fixedness of purpose in its use, malice is implied, without the proof of any particular enmity. Malice is a formed design of doing mischief to another, and is either express or implied.

7. SAME—*shooting at one and killing another.* If a person deliberately shoots at one person, when it is not either actually or apparently necessary to preserve his own life or that of some member of his family, or to prevent him or them from receiving great bodily harm, and the shot takes effect on another than the one intended, whom he kills, it will be murder.

8. SAME — *self-defense.* To justify the taking of life in self-defense, the danger must be so urgent and pressing that in order to save his own life, or prevent his receiving great bodily harm, the killing of the other must be absolutely necessary, or apparently necessary, to the party killing.

9. A person, when assailed, is required to decline the combat in good faith, and use all means that would be adopted by reasonable men to procure their safety under similar circumstances, and he has no right to take the life of another unless it is actually or apparently necessary, and the necessity, real or apparent, must be so pressing as to exclude all other reasonable means of safety, before he will be justified in slaying his assailant.

10. SAME—*right in defense of property.* A person is not justified in the taking of human life to prevent a mere trespass to his real estate or property, except in the case of his dwelling house, which he may defend even to the taking of life, if necessary, or apparently necessary, to prevent persons from forcibly

entering it against his will, and when warned not to enter and desist from the use of force. For other trespasses to real estate the law affords ample redress.

11. SAME—*jury as judges of the law.* On the trial of a person upon an indictment for murder, the jury were instructed as follows: "The court instructs the jury, that they are judges of the law, as well as of the facts. But the jury are further instructed, that it is the duty of the jury to accept and act upon the law as laid down to you by the court, unless you can say upon your oaths that you are better judges of the law than the court; if you can say upon your oaths that you are better judges of the law than the court, then you are at liberty so to act." The instruction was held to lay down the correct rule.

12. JUDICIARY—*constitutionality of law creating new judges.* The act of June 2, 1877, dividing the State into judicial circuits, and providing for the election of additional circuit judges, is not in violation of the constitution.

13. INSTRUCTION—*presenting a partial view.* On the trial of one for murder in shooting one of the commissioners of highways while attempting to remove the defendant's fence, an instruction showing that the commissioners were trespassers on the defendant's land, and that he had the right to use force to prevent the opening of his inclosure, is properly refused, as, if such were the fact, it could afford no justification of the killing.

WRIT OF ERROR to the Circuit Court of Lake county; the Hon. H. H. CODY, Judge, presiding.

This was an indictment against Peter Davison for the murder of John Robertson, on Sept. 8, 1877.

Robertson, the deceased, was one of the commissioners of highways of the town of Ella, in Lake county, and in company with the other two commissioners, Jacob Beese and August Knigge, and others, on Sept. 8, 1877, went to open a highway in front of Davison's house, which the commissioners claimed had been obstructed by Davison, by building fences across it. Davison claimed the road had never been legally laid out, or if it had been it had been legally vacated by appeal to three supervisors. The commissioners tried to persuade him to remove his fences, which he refused to do, claiming that the land where the fences were was his private property, which he would defend with all the force necessary for that purpose. The commissioners then directed the men

who came to assist them to take down the fences, whereupon Davison and his son exhibited pistols, and warned the men to desist from tearing down the fence, and got upon the fence which was being taken down. A difficulty took place. When the fence under Davison was knocked down, his revolver was discharged and Robertson mortally wounded, the defense contending that the shot was accidental, and the prosecution that Davison took deliberate aim.

Mr. W. S. SEARLS, for the plaintiff in error.

Mr. CHARLES WHITNEY, State's attorney, for the People.

Mr. JUSTICE WALKER delivered the opinion of the Court:

Plaintiff in error was indicted at the November term, 1877, of the Lake circuit court, for the murder of one John Robertson. On the 1st day of December, of the same year, he appeared and pleaded in abatement that four of the persons forming a part of the grand jury finding the indictment were over sixty years of age, and one of the grand jurors was a resident of the State of Wisconsin, and not a resident of this State; that but nineteen of the jurors selected by the board of supervisors were impaneled on the jury; that the remaining four were summoned under a special *venire facias* issued by the court, and one of the persons so summoned was over sixty years of age; that the presiding judge was elected under the act of the second day of June, 1877, to divide the State into judicial circuits and for the election of additional judges, and that the law is unconstitutional, and the judge had no power or warrant of law to hold the court. To this plea the people filed a general demurrer, which was sustained by the court. Thereupon the defendant entered a motion to quash the indictment, which was overruled by the court. The plea of not guilty was then entered.

In impaneling the jury, accused objected to Bates and Short for cause, but the objection was not allowed, and the

ruling of the court was preserved in a bill of exceptions. A trial was had, and the jury returned a verdict of guilty, and fixed the term of imprisonment of the accused in the penitentiary at fourteen years. He, thereupon, entered motions for a new trial and in arrest of judgment, both of which motions were overruled, and judgment rendered on the verdict, and accused brings the record to this court on error, and urges a reversal.

We shall not consider the errors in the order in which they are assigned, but rather in the order in which they are presented by the record.

The tenth assignment of error questions the decision of the court on the demurrer to the plea in abatement. In the case of *Davis* v. *The People*, 19 Ill. 74, it was held, that the fact a petit juror was over sixty years of age did not constitute a disqualification, but was a mere exemption. See *Murphy* v. *The People*, 37 Ill. 447; *Chase* v. *The People*, 40 id. 352. In these cases it is held to be a privilege the juror may claim, but not a disqualification. The same rule applies with equal force to a grand juror, and hence these jurors were not disqualified, but could, had they desired it, have claimed their privilege.

As to the averment that one of the grand jurors was a resident of the State of Wisconsin, the irregularity is cured by the 411th section of the Criminal Code. It provides that no indictment shall be quashed by reason of the disqualification of any grand juror. This provision is sufficiently broad to embrace those over sixty years of age, even if they were disqualified, as well as the juror averred to have been a resident of Wisconsin. In *Chase* v. *The People, supra,* it was held, that alienage was not a disqualification to a juror, even in a capital case, but was only a privilege or ground of challenge. There is, therefore, no force in this objection.

As to that portion of the plea, which questions the constitutionality of the law under which the presiding judge was elected, even if the question could in any manner be raised

15—90 ILL.

in a direct proceeding, which is not conceded, it is controlled by the case of *The People ex rel* v. *Wall,* 88 Ill. 75. In that case the law was held to be constitutional and valid, and we have no disposition to repeat the reasons then assigned for the decision announced. Whilst it may be that these questions can not be properly raised by plea in abatement, we have chosen to pass upon the facts presented by the plea as being properly before us, without stopping to inquire whether the questions can be so raised.

A careful examination of the indictment fails to show that it is insufficient in form or substance. The court below did not, therefore, err in overruling the motion to quash.

It appears, from the examination of the jurors Bates and Short, on their *voir dire,* that they were competent, under the statute. But it is urged, that affidavits of other persons show that they had previously expressed decided opinions of the guilt of accused and they had stated that he ought to be hung. Bates swears in his affidavit, filed on the motion for a new trial, that he never stated to any one that accused ought to be hung, unless "Davison had wilfully and intentionally shot and killed Robertson, the deceased;" that he never stated to any person that Davison ought to be hung, without at the same time stating in connection therewith the above qualification. Other counter-affidavits, made by these different persons, state that Worden stated to them that Bates only inquired of him whether Davison ought not to be hung, whilst he states that Bates said that Davison ought to be hung. This overcomes Worden's affidavit, and when it is remembered that it is a matter of great difficulty for a person hearing a conversation to remember and repeat it accurately,— that the most honest and truthful are liable to misunderstand,— we can not give implicit credence to such statements. Bates denies the use of the language imputed to him, in the most unqualified manner, and his character for truth and veracity is fully supported by affidavits of ten of his neighbors. The

affidavits all considered, we are not impressed that Bates swore falsely or was disqualified to act as a juror in the case.

Townsend, in his affidavit, states that the juror Short said to him that he had read and heard the matter of Robertson being killed talked of, and that a man that shot another in cold blood in that manner ought to be hung. This, Short, in his affidavit, denies in the most positive manner, and states unqualifiedly that he made no such statement to Townsend or any other person. On these affidavits we are unable to see that Short was disqualified to act as a juror in the case. When an effort is thus made to show that a juror has sworn falsely on his *voir dire*, the evidence must clearly preponderate in establishing the fact. A mere doubt is not sufficient. The evidence, we think, does not show that these jurors had expressed the opinion that accused was guilty.

It is urged that the court trying the case erred in refusing to permit accused to introduce evidence that the place where the commissioners were attempting to remove the fence was not, as they claimed, a public highway; that the fact was important, not as a justification, but as showing the feelings of the parties, and as tending to shed light on the transaction; that it was a part of the *res gestæ*. Starkie, in his work on Evidence, vol. 1, p. 39, speaks of the *res gestæ* as all the surrounding facts of a transaction, and he states they may be submitted to a jury, provided they can be established by competent means and afford any fair presumption or inference as to the question in dispute. Greenleaf, in his work on Evidence, vol. 1, sec. 108, says the "surrounding circumstances constituting parts of the *res gestæ* may always be shown to the jury along with the principal fact; and their admissibility is determined by the judge according to the degree of their relation to that fact, and in the exercise of his sound discretion, it being extremely difficult, if not impossible, to bring this class of cases within the limits of a more particular description." From these authorities it is seen that this does not fall within the rule. The vacation of the road, if it was done, as claimed,

was a long period before Robertson was killed, was not a part of the circumstances attending the homicide, and the court below did not abuse a sound discretion in rejecting the evidence. It is not, nor can it be, claimed, that the fact that there was no road where the attempt was made to remove the fence justified plaintiff in error in taking the life of deceased.

The admission of the evidence would have raised a collateral issue that would have tended to confuse the jury, obscure the real issue, and could in nowise have tended to elucidate the true issue in the case. That issue was foreign to the case, and its trial was not proper. The evidence was before the jury, that there was a dispute between accused and the road commissioners, whether there was a road at that point,—he claiming there was not, and they insisting there was. This dispute had lasted for almost a year, and if he believed there was no road there, that belief would explain his feelings and motives as fully as had the fact been established by proof. We are clearly of opinion there was no error in excluding this evidence.

Nor did the court err in rejecting, on cross-examination of Beese, the conversations he had with the road commissioners on previous occasions, and in confining him to the day on which the homicide was committed. The cross-examination must be brought within fair and reasonable limits, and it is to some extent discretionary with the judge trying the case. If accused desired to learn whether the witness had bad feelings towards him, he could have asked the question and ascertained the fact by examining him in reference to the fact. We perceive no error in rejecting this evidence.

It is urged that the court below erred in giving, refusing and modifying instructions. They are unreasonably numerous, and when they are all considered, we have no hesitation in saying they gave the law of the case fairly to the jury. It is almost singular, in passing upon so many instructions, the court below did not commit an error in giving or refusing them.

It is insisted, the first of the people's instructions is wrong, in asserting that the law implies malice from the deliberate and intentional use of a deadly weapon. This, as a legal proposition, is undeniably true. The word malice is defined to be "A formed design of doing mischief to another, technically called *malitia præcognitata* or malice prepense. It is either express, as, where one with a sedate and deliberate mind and formed design kills another, which formed design is evidenced by certain circumstances discovering such intention, as in laying in wait, antecedent menaces, former grudges, and concerted schemes to do him some bodily harm, or implied, as, where one wilfully poisons another; in such a deliberate act the law presumes malice though no particular enmity can be proved." Malice is always presumed where one person deliberately injures another. It is the deliberation with which the act is performed that gives it character. It is the opposite of an act performed under uncontrollable passion which prevents all deliberation or cool reflection in forming a purpose. If, then, a person deliberately uses a deadly weapon on another, it must be inferred that it was malicious. If there was fixedness of purpose in its use, it could only be from malice. The deliberation excludes all other conclusions than there was malice. It is not the use of the weapon that shows malice, but its deliberate use.

It is urged that the third instruction given for the people is erroneous. It informs the jury that accused would not be justified in killing deceased to prevent a trespass to his real estate, unless it was upon his dwelling house. We apprehend that no well considered case has gone the length of holding that a person may kill another to prevent a mere trespass to his property. A man's house is his castle, and he may defend it even to the taking of life, if necessary or apparently necessary to prevent persons from forcibly entering it against his will, and when warned not to enter and to desist from the use of force. The law affords ample redress for trespasses committed on a man's land, but does not sanction the taking of

life to prevent it. The owner may, no doubt, oppose force with force to protect his property from injury or destruction, but not to the extent of taking life, or in excess of the necessity of the case. When he carries resistance to excess and uses more force than is reasonably necessary, he becomes a wrong-doer. This instruction was correct. We are aware of no well considered case that has gone further than this instruction announces the rule.

The fourth of the people's instructions is not subject to the criticism urged against it. All of the evidence considered, the jury could not certainly know whether accused shot at Allen or deceased. If he shot at Allen when it was not apparently necessary to preserve his own life or that of some member of his family, or to prevent him or them from receiving great bodily harm, and he fired the shot deliberately, and it took effect on deceased instead of on Allen, it was murder. If such were the facts, there was the deliberation which implied the intent to kill Allen with malice, and because his malice failed in destroying its object and killed another person, that should not relieve him from the consequences of his deliberate and malicious act.

It is, however, urged that even if accused had shot and killed Allen, he could, at most, have only been convicted of manslaughter. That could not be the case if he had killed Allen in the manner specified in the instruction. If he shot at him deliberately and not in apparently necessary self-defense, or in such defense of some member of his family, and had killed him, it would have been murder. It left the jury from the evidence to find, whether the supposed facts of the instruction were true, and if they so found them, they were told that it would be murder. It did not instruct the jury, that if they found the facts as counsel for accused contended they were, they should convict of murder. Had the instruction been thus framed, then all the objections urged against it would be valid.

We perceive no error in the fifth of the people's instructions. It informs the jury that to justify killing in self-defense, the " danger must be so urgent and pressing, that in order to save his own life or prevent his receiving great bodily harm, the killing of the other was absolutely necessary or apparently necessary." In the case of *Campbell* v. *The People*, 16 Ill. 17, it was held, that the danger need not be real, but apparent, and so urgent as to excite a reasonable and well grounded fear of losing his life or suffering great bodily harm, to justify the accused defending himself by taking the life of his assailant. This instruction clearly announces the same rule. We fail to see that it could have been misunderstood by the jury.

It is urged that the sixth of the people's instructions is also vicious. It is claimed it deprives the accused of the right of judging from his standpoint whether or not the danger to him was so imminent as to justify him in using the pistol in defense. We are not able to see that it is subject to this criticism. He was bound to decline the combat in good faith, and was bound to use all means that would be adopted by reasonable men to procure their safety under similar circumstances. He had no right to take the life of deceased, unless it was apparently necessary, and the necessity, real or apparent, so pressing as to exclude all other reasonable means of safety before he could be justified in slaying his assailant. And this is all this instruction required.

It is urged, that the court below invaded the province of the jury in giving the tenth of the people's instructions. That instruction is as follows:

" The court instructs the jury, that they are judges of the law as well as of the facts. But the jury are further instructed, that it is the duty of the jury to accept and act upon the law as laid down to you by the court, unless you can say upon your oaths that you are better judges of the law than the court; and if you can say upon your oaths that you are better judges of the law than the court, then you are at liberty so to act."

If the court has a right to instruct, it is because it is supposed it knows and understands the law better than the jury. It is for that reason both the defendant and the prosecution ask instructions. If the jury are the sole judges of the law, without any aid from the court in its exposition and application, then whenever the court instructs either for the prosecution or the accused, it invades the province of the jury. Whilst accused insists that the province of the jury is invaded, he would not hesitate to demand a new trial, if the jury had found against the law as given to them by the court. Hence he would, in such case, appeal from the jury to the court, upon the grounds'that the court ultimately, and not the jury, has the right to reverse the decision of the jury as to the law of the case, and because the court has the right to inform the jury as to the law and to enforce its decisions when disregarded, and against the accused, in criminal cases, as well as in civil cases.

It is not unreasonable to require the jury to say they know the law better than the court, before they disregard its instructions. This is the construction given to this statute by several decisions of this court. See *Schnier* v. *The People*, 23 Ill. 17, *Fisher* v. *The People*, ib. 283, and *Mullinix* v. *The People*, 76 id. 211, where this form of instruction is approved and sanctioned.

The court below gave, at the request of accused, twenty-one instructions. They seem to present the law clearly, fairly, and as favorably to him as the facts of the case required. They.are based on the various theories adopted by the defense. There are various objections urged to the modifications made to some of them. We have carefully examined the changes made in them by the court, and are satisfied that the modifications thus made were required before they were given. The objectians are so numerous and have so little plausibility, that we deem it unnecessary to discuss them in detail, but dismiss them by saying, that the law as applicable to the case was fully and fairly given to the jury.

It is urged, that the court should have given a large number of instructions asked by accused, but refused.

The twenty-second asked the court to instruct, that if the road commissioners and others were on the premises without his consent, they were trespassers. Suppose they were, that did not authorize him to shoot and kill deceased.

The twenty-third asked the court to instruct, that if the commissioners were there as trespassers, he had the right to use such force as might be necessary to prevent them from opening his inclosure. We have seen that their being trespassers would not justify him in killing any of the trespassers. On this question, the jury had been properly instructed, and this instruction was wrong.

The twenty-fourth does not define the law of self-defense accurately, and if given would have taken from the jury the finding of facts.

The twenty-fifth also assumes the truth of facts, and does not state the law of self-defense correctly.

The twenty-sixth assumes to find a fact which was for the jury and not the court.

The twenty-seventh is merely an abstract legal proposition, as it only defines a riot.

The twenty-eighth does not correctly state the law of self-defense. The same is true of the twenty-ninth.

The thirtieth asks the court to instruct, that if a prosecution for obstructing this road was pending against accused, at the time, the commissioners would have no right to open the fence. Suppose this was true, it would follow that the commissioners were trespassers, and we have seen that would not justify accused in taking the life of Robertson.

The thirty-first informs the jury as to the weight of a portion of the evidence and would have invaded the province of the jury. The thirty-second is of the same character, and so is the thirty-third.

The thirty-fourth asserts, that accused was lawfully repel-

ling an attack.   That was the question the jury were trying, and the court had no power to determine it.

The thirty-fifth is not supported by any evidence in the case or upon anything appearing in the record.

We have carefully read the evidence in the case, and are fully satisfied that it clearly warrants the finding of the jury. Because there may be a conflict in the evidence, we are not required to reverse.   It is only where the evidence fails to sustain the verdict that we can interfere.   Believing the accused has had a fair trial, and was properly convicted, and finding no error in the record, the judgment is affirmed.

*Judgment affirmed.*

Mr. JUSTICE DICKEY, dissenting:

I can not concur in the foregoing opinion.   After a careful examination of the proofs, I am clearly of the opinion that the conviction is not warranted by the evidence.   I can not see how an impartial jury, properly instructed, could possibly say that this evidence shows, beyond a reasonable doubt, that the accused shot Robertson deliberately and intentionally. It seems to me the weight of the evidence is that he did not. Plainly the proof does not relieve that question of reasonable doubt.

I think the accused ought to have been allowed to prove that the *locus in quo* was not a public road.   Witnesses for the prosecution had spoken of the place as in a public road. It may be that to prevent a mere trespass upon property will not justify taking human life—but malice is attributed to the accused by the prosecution upon the ground that he took with him a loaded fire-arm and used it.   The circumstances which led to the taking such a weapon upon the ground sheds light upon the motive, and the motive has much to do with the question as to whether the discharge of the pistol was or was not accidental.   The theory of the defense was, that the pistol was taken there for the mere purpose of preventing the destruction of property by *intimidation*.   If there was no

public road, Davison had a right to protect his property by intimidation. If it was in the public road, he had no such right and was in the wrong throughout. It was important for him to show, not only that he claimed there was no road there, but that he made that claim in good faith; and what could show his good faith in this belief so fully as to prove that what he claimed was true in fact?

It also seems to me that the accused had the right, on cross-examination of the witness Beese, to show the antagonism of the witness to the accused, by showing what he had said upon former occasions to the commissioners in relation to this road controversy. It is true, a witness may be asked directly as to his feelings of hostility to the party against whom he testifies; but the party is not confined to that mode of proof. Generally, that mode of examination sheds but little light on the subject. Much the most reliable evidence of the feelings of a witness consist in proofs of what he has said and done.

I think this conviction ought to be reversed because of the giving of the tenth instruction. By it the jury were told that they must accept the law as laid down by the court, unless they can swear "that they are better judges of the law than the court." The statute of Illinois says, "Juries, in all criminal cases, shall be *judges of the law* and fact." The instruction, in my judgment, nullifies the statute. It says, in substance, to the juror, "Although you may conscientiously think and believe that the true rule of law on some material point is different from that laid down by the court: still you must lay aside your duty to judge what the law is, (a duty imposed upon you by the statute and by the juror's oath which you have taken,) and must obey that which you think is wrong, unless you are so sure you are right that you can swear that the judge of the court is wrong." In fact, the fair meaning of the language of this instruction goes farther than this—it says, in substance, "You must not undertake to judge of the law, as against what the court has charged, unless you are prepared to swear, not only that the judge is wrong on the

point in question, but you must also be prepared to swear generally that you are a better judge of the law than the court." This can not be the law while this statute stands upon the statute book. Before any juror could meet this condition, he must be able to swear as to what is in another man's mind. Before he can compare the ability of his own mind with that of another, he must know so well what ability the judge has that he can swear to it. This is unreasonable. The statute contains no such qualification. Its provision, that juries, in such cases, *shall be* judges of the law, is coupled with no such conditions. What would be thought of a statute which should say "juries, in all criminal cases, shall be judges of the law whenever they can say, upon their oaths, that they are better judges of the law than the court." It would be regarded as preposterous; and yet this is that to which this statute is reduced by this instruction.

It is undoubtedly true that jurors, in criminal cases, although made by statute judges of the law, should receive with much consideration what the court may say to them as to the law, and should accept it as a guide, except in so far as in their judgment such advice seems to them to be wrong.

The wisdom of this statute may seem to be questionable; but cogent reasons might be suggested in support of its propriety. However this may be, it is a valid statute, in full force. Courts as well as parties must be controlled by the law. It is the business of courts, under our constitution, to declare what the law is; and it is no part of the duty of a court to make that law which is not law, and no court, high or low, is warranted in trampling under foot a plain and valid statute, merely because the wisdom of its provisions may not be consonant with the views of the court. A prevailing sense of the sanctity of the law is the fortress by which the power of courts is to be protected. When courts rebel against the law, with what grace can they punish offenders for its violation?

I am aware that such an instruction has heretofore been sanctioned by this court, and it is not strange that the circuit

court should not have felt at liberty to refuse to give the same, but to my mind it is so plainly in violation of the statute that I think the former rulings on this question ought to be overruled. No vested rights have arisen. I, for one, can never give my sanction to such a proposition.