JUDGE COFER
delivered the opinion of the court.
Having been found guilty of manslaughter and sentenced to confinement in the penitentiary for eight years for killing John Harrison, the appellant seeks a reversal of that judgment on two grounds: First, that the court erred in excluding important legal evidence offered by him; and second, that the court erred to his prejudice in instructing the jury.
1. A witness for the commonwealth proved declarations made by appellant relative to the homicide, but stated that he did not hear all that appellant said at the time; and appellant offered to prove by other witnesses, who were present at the time and heard the words proved by the commonwealth’s witness, other statements made in the same conversation *497 tending to make out the defense. This was objected to and excluded; but while we regard the evidence as competent, if the declarations testified to by the witness for the appellee were introduced by the commonwealth, yet as it does not appear who brought out the evidence of the declarations, we can not decide that the court erred in excluding the evidence offered by appellant.
2. The instructions given are nearly all objectionable because of an attempt made to enumerate the collateral facts which the evidence tended to prove, instead of being hypothecated upon the facts necessary to constitute guilt or to make out a defense. The objection to an attempt to enumerate the facts which the evidence tends to prove, instead of basing the instructions on the facts necessary to be found by the jury, is that it unnecessarily lengthens the instructions, and is on that account calculated to confuse and mislead the jury; and it is liable to the further objection that by giving prominence to the facts enumerated other facts not recited seem to be subordinated, and may on that account be overlooked by the jury; or they may conclude that as the court has referred to a part and omitted to mention other facts which the evidence tends to prove, such facts were deemed by the court of no importance. Instructions ought therefore, as a general rule, to be based only upon such facts as must be found by the jury in order to establish guilt or to make out a defense, thus leaving to counsel to argue the evidence tending to establish the essential facts, and to the jury to decide how far the evidence establishes them.
The jury were told in substance, in the second instruction, that if the appellant and the deceased had a sudden quarrel, and without fault on his part appellant in sudden heat and passion, and not to defend himself from immediate, impending, and threatened danger, struck the deceased with his fist and knocked him down, and he was iniured by the fall and died *498 from the injury, they should find the appellant guilty of manslaughter.
This instruction does not correctly lay down the law of self-defense, and is also objectionable on the ground that it required that the appellant should have been without fault before heat of passion could reduce a killing done by a blow of the fist in a sudden quarrel from murder to manslaughter. It is not necessary, in order to excuse a homicide on the ground of self-defense, that there should be actual immediate impending danger. If the appellant believed, and had reasonable ground to believe, there was immediate impending danger, and he had no other apparent and safe means of escape, he had a right to strike, although the supposed danger may not in fact have existed.
In the third instruction the jury were told that if an altercation took place between the parties in a grocery, where they seem to have met, and the deceased invited the appellant to go with.him into the street and settle the matter, and the appellant voluntarily went with him to settle the matter, and after getting into the street angry words were used by both, and both were ready and willing to fight, and they did fight, and appellant wounded the deceased, and he died from the effect of the wounds, appellant was guilty of manslaughter. This instruction was erroneous. The appellant may have gone out for an amicable settlement and with no hostile intention; and if he did so, and a quarrel arose and a fight ensued, his right of self-defense was unaffected by the fact that he had gone voluntarily.
The qualification of the fifth instruction was also erroneous. In it the jury were told, after a recital of many facts which the evidence tended to prove, that if in view of such facts appellant believed and had reasonable grounds to believe deceased would proceed immediately to inflict bodily harm upon him with a knife, and that he would do so unless pre *499 vented by such act of self-defense as was then in his power, then appellant’s acts were excusable on the ground of self-defense and apparent necessity. Thus far, aside from the improper recital of collateral facts, the instruction was right; but it was qualified as follows: “Unless the jury find that when the parties went out to settle the matters between them, not in an amicable way, but by force and violence, or in any way that' might arise between them, then they can not acquit on the ground of self-defense and apparent necessity, and will find as stated in the third instruction”—i. e., for manslaughter. The qualification was clearly erroneous, because it assumed that the parties went out to settle the matters between them, not in an amicable way, but by force and violence, or in any way that might arise between them.
The evidence tended to prove that the appellant knocked the deceased down with his fist, and that he fell with his head against a post from which a nail protruded one half or three quarters of an inch, and that his head struck the nail and the scalp was cut; that the appellant stamped upon the body of the deceased with his foot, and that the latter was insensible from that time until his death, the symptoms indicating that there was compression of the brain.
A medical witness testified that he cut into the skull at the wound made by the nail, but discovered no evidence of injury to the bone; but he and other physicians, believing there was compression or extravasation of blood on the brain, and that the patient would die unless he could be relieved by trephining, they as a last resort sawed out a piece of the skull-bone about an inch in diameter and removed it, and found clotted blood resting on the brain; that they did not remove the blood, but placed the piece of bone in the aperture and left it there. This was a day or two before the patient died.
In view of this evidence the court gave the following instruction, viz.: “The court instructs the jury that though *500 they may believe the death of Harrison was caused by the surgical operation, yet if the operation was performed by physicians as a remedy for the wounds inflicted by the defendant, they can not acquit him on that ground.”
We can not approve this as a principle of the law of the land. The mere fact that the operation was performed by physicians as a remedy for the wounds inflicted by the appellant, without any reference to the question whether such an operation was reasonably deemed to be necessary, or was performed by men of ordinary skill as surgeons or in an ordinarily skillful manner, can not render the appellant legally responsible for the death of Harrison, if in fact the operation and not the injuries inflicted by him caused his death.
The rule deducible from the authorities seems to be that where the wound is apparently mortal, and a surgical operation is performed in a proper manner, under circumstances which render it necessary in the opinion of competent surgeons, upon one who has been wounded by another, and such operation is itself the immediate cause of the death, the person who inflicted the wound will be responsible. (Commonwealth v. McPike, 3 Cushing, 181; Parsons v. The State, 21 Ala. 300.) But if the death results from grossly erroneous surgical or medical treatment, the original author will not be responsible. (21 Ala. 300.)
It should therefore have been left to the jury in this case to say whether the operation performed on the deceased was such as ordinarily prudent and skillful surgeons, such as were to be procured in the neighborhood, would have deemed necessary under the circumstances in view of the condition of the patient, and whether it was performed with ordinary skill; and they should have been told that if they found the affirmative of these propositions, the appellant was responsible, although the operation and not the wound inflicted by him caused the death; but that if they found that the operation would not have *501 been deemed necessary by such ordinarily prudent and skillful physicians and surgeons, or if it would have been deemed necessary and was not performed with ordinary skill, and the death resulted from the operation and not from injuries inflicted by appellant, they ought to acquit him, even though they might believe such injuries would eventually have proved fatal.
For the errors indicated the judgment is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.