*Reid & Stone, for appellant.   J. J. Cornelison, for appellee.*

---

### GEORGE E. JENKINS *v.* COMMONWEALTH.

**Criminal Law—Homicide—Murder and Manslaughter—Self-Defense.**
>    If one provokes a combat, or produces the occasion, in order to have a pretext for killing his adversary or doing him great bodily harm, the killing will be murder, no matter to what extremity he may have been reduced in the combat. But if he provokes the combat or produced the occasion without any felonious intent, intending an ordinary battery merely, the final killing in self-defense will be manslaughter only, and not murder.

**Evidence—Coolness and Deliberation.**
>    In a charge of murder the coolness and deliberation with which the slayer acted may furnish strong evidence that his act was prompted by malice and was not caused by sudden heat of passion excited by provocation, but the inference to be drawn from his coolness and deliberation under provocation is one of fact for the jury, and they should be left to make it or not as their own judgments may dictate, free from any direction of the court.

APPEAL FROM HENDERSON CIRCUIT COURT.

October 16, 1878.

OPINION BY JUDGE COFER:

Convicted of the murder of Bryan Gilroy and sentenced to be confined in the penitentiary for life, the appellant seeks to reverse the judgment against him. He complains only of alleged errors in the instructions given to the jury.

Of the first and second instructions which defined the crimes of murder and manslaughter no complaint is made. To the third instruction, correctly defining the law of self-defense, the court added this qualification: "But should the jury believe from the evidence that the accused intended to take the life of Gilroy, and cursed and abused him so to induce Gilroy to make an assault upon him to afford a pretext to carry this design into execution, and in pursuance of this design he deliberately killed said Gilroy, then they will find him guilty as charged," etc.

Instruction 4 reads as follows: "If the jury believe from the evidence beyond a reasonable doubt that the defendant began the difficulty with Gilroy, and used insulting language to him for the purpose of inducing Gilroy to attack the defendant, the jury should not acquit the accused on the ground of self-defense, nor reduce the crime from murder to manslaughter, but should find him guilty of murder, even though in the difficulty he may have been assaulted by Gilroy and placed in imminent danger of death or great bodily harm."

The appellant's counsel complain of the modification of instruction three, and of the whole of instruction four. His objection seems to be based upon two grounds. First, that there was no evidence upon which to base either; and, second, that if there was, the court gave undue prominence to that hypothesis by repeating it.

The evidence showed that the appellant went into a grocery and bought a quart of whisky, which he carried out and put in his wagon; he then returned and took off his overcoat and took out his knife and commenced whittling a stick or paring his nails. Presently Gilroy came in, carrying in his hand a green dogwood stick about the size of an ordinary walking cane, and took his position on or against a counter nearly opposite to where the appellant was sitting or leaning, about nine feet from him. After Gilroy came in none of the witnesses seem to have seen appellant's knife until he commenced to cut Gilroy with it.

Soon after Gilroy came in appellant asked him why he had not done that ditching for him as he had promised. Gilroy replied that he had not because he had been sick. Appellant then said, "'You

have acted the damned dog with me." Gilroy then replied, "No, I reckon not." Appellant then said, according to one witness, "You are a damned son-of-a-bitch, the length of your stick," and according to another, "You are a damned thieving son-of-a-bitch, the length of your stick."

Gilroy said, "I can't take that," got off the counter and made two steps toward the appellant, holding his stick about one-third of its length from one end, and holding his hand about level with his shoulder, but did not strike with it. The appellant at that instant straightened up and put his right foot forward and cut Gilroy twice with his knife, the blade of which was about four inches long. The first stroke cut Gilroy's arm above the elbow, and he let his stick fall, and the second stroke cut open the left hand. Gilroy turned and ran, crying "murder," the appellant pursuing, and as they went down the steps at the grocery door the appellant cut him again, in the back, and pursued him around a circle of about 75 or 100 yards and cut at him once as they ran, but missed him.

Appellant continued the pursuit until a bystander interfered and stopped him; he then remarked he had done enough and got in his wagon and drove a short distance and stopped; he then returned and asked Kelly if he did not see the big Irishman (meaning Gilroy) strike him with the stick. The witness said he did not; he also asked why they did not stop the bleeding of Gilroy's wounds, and when told it could not be done proposed to go himself and stop it, and also proposed to go for a doctor, and tried to borrow a horse for that purpose. Two witnesses also testified that after appellant had driven his wagon away from the grocery he said he had done just what he wanted and intended to do, after a minute he added, "what else could I have done, the big Irishman come at me with his shillalah?"

As the judgment must be reversed we refrain from commenting on the evidence, merely remarking that it seems to us there was evidence sufficient to warrant the giving of the instructions, if they are otherwise unobjectionable. We perceive no valid objection to the qualification of instruction three.

If one provokes a combat or produces the occasion, in order to have a pretext for killing his adversary or doing him great bodily harm, the killing will be murder, no matter to what extremity he may have been reduced in the combat. But if he provoked the combat or produced the occasion without any felonious intent, intending,

for instance, an ordinary battery merely, the final killing in self-defense will be manslaughter only.

This is stated by the learned authors of cases on self-defense as the result of the authorities, and they cite in support of the first proposition, Hawkins Pleas of the Crown, Sec. 18, page 87, and Sec. 26, page 97 ; *State v. Hill,* 4 Dev. and Batt. 491 ; *Stewart v. State,* 1 Ohio State 66 ; *Adams v. State,* 47 Ill. 376, and Evans v. State, 44 Miss. 76. In support of the latter proposition they cite *Adams v. State,* 47 Ill. 376. These cases sustain the principles deduced from them, and it seems to us they accord with reason, justice and the spirit of the law.

The qualification of instruction three conforms to this conclusion, but instruction four does not. In that instruction the jury were told that if the appellant used insulting language to the deceased for the purpose of inducing Gilroy to attack him, and he then killed him in resisting the attack thus provoked, he was guilty of murder without reference to the question whether at the time of using the provoking language he designed to kill Gilroy or not. The modification previously given was the whole law on the subject of provocation intended to provoke an attack in order to have a pretext to kill Gilroy, and instruction four should have been so modified as to present the law in case the jury found that the appellant used offensive language to provoke an attack, but without any design to take Gilroy's life.

Counsel also complain that instruction four and the modification of three were in effect comments on the evidence by the court, and that the rule that instructions should be hypothecated upon facts necessary to constitute guilt or to make out a defense, and not upon collateral facts which the evidence tends to prove, was violated. *Coffman v. Commonwealth,* 10 Bush 495 ; *Brady v. Commonwealth,* 11 Bush 282.

The facts upon which these instructions were hypothecated were not collateral or simple evidence of other facts, but, if found by the jury, called into operation a distinct principle of the law of homicide not previously presented to the jury, and under it constituted guilt.

Instruction five is also complained of. It reads as follows: "The court further says to the jury that in determining whether a homicide is murder or manslaughter the mental condition of the slayer is to be considered, and, whatever the provocation may have been, if the slayer, at the time of the killing, had the command of his passions

and acted with coolness and deliberation, the killing is murder, unless it was done in self-defense."

That the slayer acted with coolness and deliberation may furnish strong evidence that his act was prompted by malice and was not the offspring of a sudden heat of passion excited by the provocation, but the inference to be drawn from his coolness and deliberation under great provocation is one of fact for the jury, and they should be left to make it or not, as their own judgments may dictate, free from any direction of the court.

Judgment *reversed*, and cause remanded for a new trial upon principles not inconsistent with this opinion.

*John Young Brown, for appellant.    Moss, for appellee.*