## ALBERT CHRISTMAN
## v.
## JULES RAY.

*Negotiable Instruments—Judgment Note—Depositions—Suppression of —Foreign Tongue—Constitution of Illinois, Schedule of, Sec. 18—Evidence—Instructions.*

1.   An objection that there was nothing to show that the person who acted as interpreter in taking a deposition in a foreign country had been sworn according to law, or that the commissioner had taken an oath to faithfully interpret the same, should be made before trial, and comes too late when made in the midst thereof, and the making of a motion to suppress the deposition upon other specific grounds is a waiver of such objection.

2.   Sec. 18 of the Schedule of the Constitution of Illinois, requiring judicial proceedings to be in the English language, warrants the taking of depositions in a foreign land in the tongue thereof.

3.   Where a commission issued from this country in the English language to a foreign country is returned with the answers of the witness written in the language thereof, the same may be translated, and the translation given in evidence, but such translation may be shown to be erroneous.

4.   An instruction setting forth that the preponderance of the evidence is determined by the number of witnesses on each side, where the opposing witnesses are equally credible and equally well corroborated, and have no greater interest in the result of the suit, should not be given.

[Opinion filed December 7, 1891.]

APPEAL from the Circuit Court of Iroquois County; the Hon. ALFRED SAMPLE, Judge, presiding.

Messrs. H. K. WHEELER and R. W. HILSCHER, for appellant.

Messrs. HARRIS & HOOPER, for appellee.

CARTWRIGHT, J.   On the 20th day of February, 1889, judgment was entered in vacation by confession in the circuit clerk's office of Iroquois County, in favor of appellee against appellant, on a judgment note for $338, dated December 31, 1887, purporting to be executed by appellant, payable to appellee.   At the next ensuing term of the Circuit Court the judgment was, on motion of appellant, opened by the court, and appellant had leave to plead to the merits upon giving bond to protect the appellee in his judgment.   By the pleadings subsequently interposed, the execution of the note was put in issue, and the question was tried with a jury, resulting in a verdict for appellee upon which judgment was entered. After the issue was formed, appellee sued out a commission directed to one Duvoison, a notary public of Switzerland, to take the depositions of Jaques Henry Ray and others, residents of that country.   Upon the depositions taken in pursuance of the commission being returned and filed in court, appellant entered his motion to suppress them, assigning as one reason therefor, that the interrogatories and cross-interrogatories put to the several witnesses, together with their answers to the same, appeared in said depositions in the French language.   The commission, and direct and cross-interrogatories as sent out and returned, and the evidence of Jaques Henry Ray as it is translated and went to the jury, are preserved in the record, all of which are in English; but the record recites that the depositions still being in the French language, neither of the parties being able to read them, the parties consented to have them translated by John L. Donovan, Jr., who thereupon translated the deposition of Jaques Henry Ray.   The parties agreed to the suppression of all the depositions except that of Jaques Henry Ray for other rea-

sons, and as to that deposition the court overruled the motion, except as to the relevancy of certain answers reserved to the hearing.

Upon the trial, appellee offered in evidence the deposition of said Jaques Henry Ray, and proposed to read to the jury the translation so made by Donovan in English. Appellant admitted that Donovan would swear that the translation was correct, and made no point as to the method or correctness of the translation or interpretation to the jury, but renewed the objection on account of Ray's answers as returned being written in French, and made the further objection that there was nothing to show that the person who acted as interpreter in taking the deposition had been sworn according to law, or that the commissioner had taken an oath to faithfully interpret said deposition. The objection concerning the proof of an oath being taken by the interpreter or commissioner to truly interpret was not made before the trial, and being of a nature that, if valid, it might be obviated, came too late when made in the midst of the trial, and the making of the motion to suppress the deposition on other specific grounds was a waiver of such objection. Brackett v. Nikirk, 20 Ill. App. 525.

The objection on account of the use of French so far as it was employed in the deposition, was based upon Sec. 18 of the schedule of the constitution, which is as follows:

" All laws of the State of Illinois, and all official writings, and the executive, legislative and judicial procedings, shall be conducted, preserved and published in no other than the English language." The objection was overruled and the translation made under the agreement was read to the jury. The method pursued in taking the deposition was this: The commission with the direct and cross-interrogatories all written in English, was sent to the commissioner; each direct and cross-interrogatory was translated into the French language and written down in that language as put to the witness, and his answer to each was written in his own words as spoken in his own language, which was French, and the deposition was then read to the witness and he signed and swore to it, and the whole was certified to and returned by the commissioner.

Appellant contends that the taking and returning of the deposition in this way was conducting a judicial proceeding in other than the English language as prohibited by the constitution, and was therefore unlawful. Judicial proceedings, in the broadest sense, embrace all proceedings in a court of justice, or which relate to or proceed from such a court, but such proceedings are not all preserved or published. All that is preserved is the record history of a cause, and the provisions concerning the language to be used in preservation and publication must refer to the records of the courts, and this is conceded by counsel for appellant. The pertinent provision in this case is that judicial proceedings shall be conducted in no other than the English language. This prohibition extends to all judicial proceedings, and governs alike the court in the trial of a cause and those who conduct proceedings in the cause by authority emanating from the court, whether conducted here or elsewhere. The taking of the deposition was a method of making evidence, material to a determination of the rights of the parties but which was beyond the jurisdiction, available in the cause. The commissioner in Switzerland acted by virtue of our laws and was bound to act in conformity with them. He had the same liberty in respect to foreign language, as a court here would have, and no more. If no part of his proceeding could be had in a foreign language, the same construction of the prohibition would exclude from the courts all evidence, oral and written, that must be adduced in the first instance in a foreign language. It is impossible to take the testimony of a witness who does not understand English, either in court or by deposition, without some portion of the proceeding being conducted in other than the English language. The evidence as it comes from the mouth of the witness is not English in such cases. By such construction, documentary evidence would be entirely excluded unless in English. If a contract or other document be in a foreign language, still that and that only is the instrument of evidence, and it must be produced, proven and offered in evidence. Its meaning must be given to the jury by translation into English, but the fact remains that the evidence itself is in another language.

We are to seek in the language used in the constitution for the thought which the people intended to express by a consideration of the whole instrument in the light of the common law, and keeping in mind that the constitution was not the beginning of law for the State, but that there was an existing system of laws which it recognizes, to be continued and enforced subject to its limitations. Cooley's Const. Lim., 5th Ed. 73–4. The constitution, by such provisions as that the right of trial by jury should remain inviolate, and that the privilege of habeas corpus should not be suspended, assumes the existence of a system of laws. By its declaration that all persons should find in the laws a certain remedy for every injury and wrong, it shows a plain intent that every avenue to justice should be open. A construction so narrow and arbitrary as to cut off important methods of obtaining justice and to defeat the general intent of the instrument, should not be adopted. It would be at variance with the spirit of the instrument itself. In the furtherance of justice, evidence in foreign languages must be used. To interpret the constitution so as to prevent it, would be to make it an instrument of oppression and injustice. Evidence, which must be presented in other than the English language, may be the only means of obtaining justice. The same provision as that under consideration was contained in the constitution of 1848, and during its continuance, as well as before, the courts constantly recognized and enforced rights dependent upon evidence which could only be adduced in a foreign language. The common law recognized the right to offer evidence in a foreign language. Instruments in a foreign tongue have always been admitted in evidence in courts, and where the language of the instrument is foreign, evidence is received of the proper meaning of that language. 2 Phillips on Evidence; Cowen and Hill's and Edwards' notes, 709, 733; 1 Greenleaf on Evidence, 14th Ed., Sec. 280. The courts have always sustained actions for libel or slander published or uttered in a foreign tongue, and in such cases the words in the foreign language proven to have been employed by the libeler or slanderer are evidence and sustain the action. The very gist of the whole matter to be pre-

sented to the jury is in the foreign language. The meaning is to be given to the jury by translation, but the foreign words are to be proven in the judicial proceeding. Schmisseur v. Kreilich, 92 Ill. 347. It seems clear that it was not intended by this provision to bar out all evidence that must be adduced in a foreign language, and if it may be so adduced in court, it can be so adduced by way of deposition. Suppose a deposition to be taken merely to prove material documentary evidence in a foreign tongue so as to introduce it. In such case it is evident that the original document is to be identified and returned by the commissioner, and not a translation of it, and if a translation should also be returned, the original, as a part of the deposition, would still be the only legal evidence. So, also, of oral testimony taken by deposition. A deposition taken by commission is the testimony of a witness in a cause on oath or affirmation and written down, and the original answers, duly signed and sworn to by the deponent, and properly authenticated, are returned with the commission to the court from which it issued. 1 Greenleaf on Evidence, 14th Ed., Sec. 320. His original answers as they come from his lips are his deposition. The commissioner is to cause the interrogatories, together with the answers of the witness thereto, to be reduced to writing in the order in which they shall be proposed and answered and signed by such witness, and the commissioner must certify that the deposition was sworn to and signed by the deponent. This was the method under the system of laws in force when the constitution was adopted. It would be absurd to say that the witness is to hear, read, or is to sign or swear to his answers written in English when he does not understand the language. He would know nothing about the truth of it and could not swear to it. It is evident that he must understand what he signs so that he may swear to its truth. The Supreme Court of Texas in the case of Cavasar v. Gonzales, 33 Tex. 133, say: "The first objection is that all depositions should have been excluded; and the reason assigned is that they were written in the Spanish language. The witness could speak no other. Our statute declares the answers of the witness shall

be taken. How can this be done if not in the language of the witness?" If the witness signs the original answers, they constitute his deposition, and any translation that might be made by commissioner or interpreter would not be his deposition or have any sanction of his oath. Its accuracy as a translation would rest on the oath of the translator or interpreter, but the deposition would still be in the foreign language. It seems to be conceded that if the deposition had been written in nothing but English, and had been returned and filed in that tongue only, it would not be obnoxious to the constitution although the witness spoke French. It is contended that while the witness and interpreter might talk in French without violating the constitution, what they said could not be written down without infringing upon its provision. Interpreters may be sworn when necessary, and it is manifestly necessary in some way to interpret the interrogatories into the foreign language, and when so interpreted they must be written down as propounded to the witness in the foreign language, and his answers must be written and signed. It is difficult to perceive how the constitution would be better satisfied if the commissioner or interpreter made a translation and sent it along with the deposition, than if it should be made here under better safeguards for attaining justice. There was no necessity for it. Home industry proved equal to the task of translation. No right was gained or lost by failing to send along a translation made in Switzerland. If it should be admitted that the evidence could be written in English and signed so as to constitute the deposition, or that a translation might be made in Switzerland which would be the deposition, it would be most unsafe and dangerous. It would put plaintiff, defendant and witness at the mercy of the interpreter. No interested party is allowed to be present at the taking of a deposition to see that a correct translation is made, and there would be no possible redress for either error or rascality in the interpreter. Errors in translation can not be detected here unless the taking is conducted by writing the questions and answers in the foreign language so that the really vital parts of the deposition

shall be in a foreign language. When a foreign word or sentence is interpreted, it is essential to the rights of the parties that each should have a chance to know and prove by his own interpreter whether the translation is correct. A party is not to be bound by an interpretation, but may show that a translation is erroneous. Schnier v. People, 23 Ill. 17; Thompson on Trials, Sec. 366. A deposition must be interpreted by some one when it is finally made use of in the judicial proceeding, and must reach the jury in English. The jury have nothing to do with the reading or inspection of a deposition, and if in French, it could not reach them in that way. They are not allowed to have the possession or inspection of depositions in their retirement. Depositions are read to them and reach them in that way alone; but if they do reach the jury in English under proper safeguards of correct interpretation, every right of the parties is preserved and every beneficial result of the constitutional provision is attained. A translation in the presence of both parties, with opportunity to each for inquiry and examination of the interpreter and for production of evidence as to the meaning of words or phrases employed by the witness, is the best calculated to insure correctness of translation. In this case there was a mutual selection of an interpreter and no question was made of the method of translation or its accuracy. In 2 Phillips on Evidence, 5th Am. Ed., Cowen and Hill's and Edwards' notes, 219, note 4, it is said: "Where a commission issued from this country in the English language to Bremen, is returned with the answers of the witness written in German, the same may be translated and the translation given in evidence," referring to Kuhtman v. Brown, 4 Rich. 479. In that case the Supreme Court of South Carolina uses this language: "An interesting question is that which relates to the manner in which the plaintiff introduced his testimony obtained by commission at Bremen. The questions were in English, the answers in the German language, and they were interpreted to the jury *viva voce* on oath by Morris Levin. * * * Upon general principles it is contended that our law exacts the English tongue as its only language.

Christman v. Ray.

This is true as to the pleadings, and it is also true that it speaks that language to the jury. But is it true that it hears no other ? Every-day experience testifies to the contrary. Any language is heard in court where a foreign witness must be used there, and what is the office that it performs? It requires that means shall be furnished by the actor on the occasion, or in some manner provided, to convert the testimony, clothed and adduced in a foreign tongue, into that which the jury, who are to estimate it, comprehend."

This deposition stood in court as the testimony of Jaques Henry Ray in his own words. Those words, as uttered by him, stood just as they would if he were present in court and spoke them there, and there was no impropriety in interpreting them to the jury by rendering them into English in a manner agreed upon by the parties. Judicial proceedings in the production of evidence must be so conducted under this provision of the constitution that such evidence, whether it be of necessity made manifest by sign language or in a foreign tongue, shall be converted into English in its use, and shall speak in no other language to court or jury in the determination of rights and the administration of justice. Such construction gives effect to the provision in harmony with the other provisions of the instrument, and with its general spirit. The method adopted in this case was as good as could be devised and we think there was no error in it.

It is objected that some interrogatories were not the same after being translated into French in the taking of the deposition and retranslated by Donovan. There was no substantial difference, and the testimony was not affected by the minor differences of expression. The third instruction as asked by the defendant, stated in substance that the preponderance of the evidence is determined by the number of witnesses on each side, where the opposing witnesses are equally credible and equally well corroborated, and have no greater interest in the result of the suit. The court modified it so as to tell the jury that they should not ignore the fact of numbers in such case in determining the preponderance of the evidence. While the court may properly caution the jury not alone to count

the witnesses and base their verdict on the count, which would be a manifestly improper method, yet the court should not invade their province to judge of the evidence and what it proves by directing them to base the verdict on such a count in any event. The instruction as asked was bad. The corroboration by other evidence contemplated by the instruction might as well be by the testimony of other witnesses as anything else, and amounted to saying that if there were enough of them and they corroborated each other well enough, then the verdict should be based on a count. The court improved it by the modification and appellant can not complain of its being given.

The question whether appellant executed the note was sharply contested on the trial and much of the evidence was directly contradictory. We are not able to say that the jury were not justified by the evidence in the verdict rendered.

The newly discovered evidence upon which a new trial was asked was cumulative and not conclusive, and sufficient diligence was not shown by the affidavit of appellant. The judgment will be affirmed.

*Judgment affirmed.*