## Chicago, Rock Island & Pacific Railway Company v. Julia A. Ross, Administratrix.

### Gen. No. 4,752.

1. BURDEN OF PROOF—*upon whom rests to show lack of knowledge of plaintiff's intestate of defective condition of headlight.* Held, in this case, that the burden was upon the plaintiff to show that his intestate, who was a servant in the employ of the defendant company, did not know that the headlight of an engine was defective, the defect in the headlight being the cause of the accident according to the allegations of the declaration.

2. ORDINARY CARE—*when habits of care competent.* In an action for death caused by alleged wrongful act it is competent where there was no eye-witness of the accident to prove the careful habits of the deceased.

3. ARGUMENTS OF COUNSEL—*how cannot be preserved for review.* Arguments of counsel cannot be preserved by affidavit; they must be certified to by the court in the bill of exceptions.

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of Rock Island County; the Hon. WILLIAM H. GEST, Judge, presiding. Heard in this court at the October term, 1906. Reversed and remanded. Opinion filed October 31, 1907.

**Statement by the Court.** Appellee brought this action to recover damages for the loss to the next of kin of George H. Ross, deceased, by his death, said next of kin being his parents, brothers and sister, the administratrix. The recovery was upon all the counts in the declaration except the second additional count. Appellee had a verdict and a judgment for $6,000 from which defendant below appeals.

The facts material to this decision are as follows: In appellee's yard at Rock Island two switch engines, No. 156 and No. 106, with their crews worked at night, in March, 1905. South of the main track and west of a certain viaduct was a track called the lead track, parallel with the main track and from this lead track switches ran to various buildings and places, and one of these switches led to a track called the Peoria house track. A switching gang consisted of a foreman, an engineer, a fireman, and one or two switchmen. George Ross, the deceased, was in charge

of the switching gang with engine No. 156; his brother, Charles Ross, was foreman of the switching gang with engine No. 106. The round-house where these engines were kept was about a mile from the yard, and George Ross did not go to the round-house at night to get the engine, but he went to the yard and began the work of finding the cars to be shifted and placed during the night, taking their numbers, and doing other preparatory work, while the rest of the crew went to the round-house and obtained the engine and came to the yard. The foreman's duties did not make it necessary for him always to do switching; but much of the time he was engaged in taking numbers of cars and ascertaining to what tracks they were to be shifted. On the evening of March 12, 1905, engine No. 156 and its crew reached the yards late. The delay was caused by the fact that the oil in the headlight caught fire and made a heat which broke the glass in front of the headlight, and it was found when they started that the headlight would not burn in the wind with the glass broken. Pursuant to the direction of the foreman of the round-house, the crew hung a lantern showing a white light, beneath the place for the headlight. The front of engine No. 156 was towards the east, and it had a headlight on the rear, so that as it backed west to the yard where George Ross was it showed a headlight as it approached him. Ross was in the depot, and asked one of the crew why they were late and was told the reason. The engine worked all that night in the yards with a common lantern in front showing a white light. The next night, March 13, engine No. 156 was sent out again without a headlight, but with a lantern hanging below the broken glass. That engine came out about seven o'clock P. M. and worked till the accident here involved, which happened about ten-thirty or eleven o'clock P. M. During the fore part of that evening engine No. 156 pushed behind a string of cars which engine No. 106 was taking east, and pushed as far as Moline, when No. 106 went on several miles east to the Natick yards, while No. 156 returned to the yard already described and went in on the

Peoria house track, leaving the switch open from that track to the lead track and displaying a green light. About half past ten or eleven o'clock, engine No. 106 came back from the east with a string of about forty cars, the engine being at the east end of them pushing them. It stopped east of the viaduct and of this yard, and one of the crew looked down into the yard west of the viaduct for the headlight of engine No. 156. The course of the work was such in this yard that at that time of the night engine No. 156 had often gone down into the west end of Rock Island for certain work customarily done there about that time. The switchman not seeing the headlight of engine No. 156, a string of cars was cut loose and kicked by engine No. 106 down the lead track, with one man on board to set brakes. Just at this time engine No. 156 came out from the Peoria house track on to the lead track pulling a string of cars, with George Ross somewhere on the west car. The switchman on the cars that had been kicked down the lead track saw the approaching engine with the white light from the lantern in front too late to stop, and there was a collision. George Ross was not seen by anyone just at the time of the collision, but he was in some way thrown from the rear car by the force of the collision and received such injuries that he died soon thereafter.

There was considerable proof offered by appellee as to where George Ross was and what he was doing during that night on March 13th before the accident, and that proof did not show him at a place where he necessarily saw the front of the engine and saw that it had no headlight. There is substantially no proof as to what he did on the night of the 12th or where he was, except that he was at work as usual as foreman of the crew with engine No. 156.

BENJAMIN S. CABLE and JACKSON, HURST & STAFFORD, for appellant.

S. R. KENWORTHY and LUDOLPH & REYNOLDS, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

In the foregoing state of the proof appellant asked the court to instruct the jury that the burden was upon appellee to prove that the deceased, George Ross, did not know that the headlight was defective, the defect in the headlight being the cause of the accident according to the allegations of the declaration. This instruction was refused. We are of opinion that the burden of proving that deceased did not know that this engine had no headlight on its east end rested upon appellee, under the authority of Goldie v. Werner, 151 Ill., 551; Howe v. Medaris, 183 Ill., 288; L. E. & W. R. R. Co. v. Wilson, 189 Ill., 89; Armour v. Brazeau, 191 Ill., 117; Sargent Co. v. Baublis, 215 Ill., 428, and McCormick Machine Co. v. Zakzewski, 220 Ill., 522. This proposition was not stated in any given instruction. It was stated in other instructions that if the jury believed from the evidence that George Ross did not know that the headlight was out, etc., then they would find a verdict for appellee and that if George Ross knew the headlight was defective he could not recover; but none of those instructions told the jury that the burden of proof was upon appellee to establish that lack of knowledge. It was specially important to appellant that this proposition should be given to the jury, for two reasons: First, appellee's first given instruction told the jury that if they believed from the evidence that the appellee had proved her case as laid in her declaration or either count thereof then they would find the issue for the appellee, unless they further believed from the evidence that George Ross assumed the risk arising from the defective headlight, as said assumption of the risk was elsewhere explained in the instructions. Appellee had no other instruction which explained the assumption of risk, but there was an instruction given for appellant which contained an explanation on that subject. But that instruction did not tell the jury where the burden of proof was upon the question whether George Ross knew that the locomotive was without a headlight. No count of the declaration stated in terms that Ross did not know that the

headlight was defective. The jury therefore were liable to understand from appellee's first instruction that it was not material that appellee should prove the lack of knowledge by George Ross of the absence of a headlight. It is true that that omission in the declaration was cured by the verdict, but this refusal of the instruction in question offered by the appellant was before the verdict, and the reason why the omission of such an allegation from a declaration is cured by the verdict is because it is assumed that the jury would not have returned, nor would the court have permitted it to return, a verdict for the plaintiff if such necessary and missing allegation had not been proven. With that allegation absent from the declaration, it was much more material that this instruction as to the burden of proof should be given. Second, while no one testified that deceased knew that the headlight was not on the front of the engine on the night of the accident and the night before, yet he was the foreman in general charge of this switching crew, and he was in and about the engine more or less all night of the 12th and until the time of the injury on the 13th and apparently had many opportunities to ascertain that he had no headlight on the front of the engine with which he was working in the night time. Appellee's proof on this subject was especially weak in not showing where George Ross was and what he did during the night of the 12th when the engine was being used by him and his crew in the same defective condition. Under all these circumstances it was especially important to appellant to have the jury instructed that the burden of proving that deceased did not know of the absence of the headlight was upon appellee.

The first instruction above stated given at appellee's request was so framed as to impose upon appellant the burden of proving that George Ross assumed the risk arising from the defective headlight, whereas that burden rested upon appellee under the law as laid down in 1 Thompson on Negligence, section 368, and applied to this State in C. & E. I. R. R. Co. v. Heerey, 203 Ill., 492.

For the purposes of another trial it seems proper to notice some other errors assigned. The court properly admitted proof of the careful habits of the deceased, because no one saw him at the time of the collision, and no one knew just what he was doing at that time or just how he came to be hurt. I. C. R. R. Co. v. Norwicki, 148 Ill., 29; C., B. & Q. R. R. Co. v. Gunderson, 174 Ill., 495; I. C. R. R. Co. v. Pritchett, 210 Ill., 140. Several of appellant's instructions were properly refused because they said that if the cause of the death of Ross was the negligence of fellow-servants appellee could not recover, whereas if the cause of his death was the negligence of the master in using the engine in the night without a headlight, and also the negligence of a fellow-servant, then appellee could recover. Pullman Palace Car Co. v. Laack, 143 Ill., 242; Chicago Terminal R. R. Co. v. Schmelling, 197 Ill., 619. Other refused instructions were practically included in given instructions. Appellant's refused instruction number five was correct, except that it failed to define fellow-servant, but said, "as defined in these instructions"; and no other instruction defined fellow-servant.

Appellant requested five special interrogatories to the jury. The court gave one which asked whether it appeared from the evidence that George Ross knew that engine No. 156 was run only with a lantern suspended below the casing of the headlight on the night he was killed. The other four special interrogatories were refused. Numbers one and three of these refused interrogatories were practically alike, and sought to inquire of the jury whether Ross by the exercise of due diligence on his part could have known that the engine No. 156 was run without a headlight. The jury might understand this inquiry to mean whether Ross by the exercise of due diligence to ascertain whether a headlight was burning could have known that it was not. It does not appear that deceased was under any obligation to inspect the engine furnished him by appellant for that service and therefore the proper inquiry on that subject should have been whether by the exercise of due care on

his part for his personal safety he would have known that the engine was run without a headlight. The second refused interrogatory was substantially the same as the one that was given. Number four inquired whether the death of Ross was due to the negligence of the switching crew. If this had been answered in the affirmative that would not determine whether or not the negligence of the master also contributed to his death, and, therefore, it was properly refused.

One ground of the motion for a new trial was alleged improper remarks of one of appellee's attorneys in the closing argument to the jury. This motion was supported by affidavits setting out the remarks alleged to have been made by said attorney. The court did not certify that any such remarks were made or what remarks were made. That which occurs in the presence of the court cannot be preserved by *ex parte* affidavits, but can only be preserved by being embodied in the bill of exceptions and certified to by the judge.

Affidavits are only proper in case the trial judge desires to have his memory aided, and even then when his memory has been aided he must certify the facts. Peyton v. Village of Morgan Park, 172 Ill., 102; Gallagher v. People, 211 Ill., 158–171. If the trial judge had certified that such language was used in the closing argument we must consider it highly improper, for it amounted to telling the jury that there was no measure of damages in this case, and it invited them to assess such damages as they pleased, and in effect told them that the trial judge would not interfere. In fact appellee offered an instruction which was afterwards given to the jury, laying down the measure of damages. It would therefore have been improper to ask the jury to act at will in assessing the damages, regardless of the legal rule for their measurement.

The foregoing opinion was prepared in December, 1906, but we withheld it because the principles covered by the instructions above discussed were involved in George B. Swift Company v. Gaylord, 126 Ill. App., 281, pending

in the Supreme Court on appeal from this court. The opinion of that court in that cause, filed October 24, 1907 (229 Ill., 330), fixes upon appellee the burden of proving that deceased did not know of the defect, and distinguishes the cases cited in support of the contrary rule. It also fixes upon· appellee the burden of proving that deceased did not assume the risk.

The judgment is therefore reversed and the cause remanded.

*Reversed and remanded.*