## The People of the State of Illinois, Defendant in Error, v. Andrew A. Strauch, Plaintiff in Error.

### Gen. No. 5149.

1. APPEALS AND ERRORS—*when abstract insufficient to present for review overruling of motion to quash.* An abstract should show the contents of the indictment to enable the court to determine from such abstract and without an examination of the record, the propriety of the action of the trial court in overruling a motion to quash.

2. BILL OF EXCEPTIONS—*when party not entitled to.* A party cannot at one term have a bill of exceptions, preserving evidence heard upon some preliminary motion, and an exception to the action of the court thereon, at some former term.

3. BILL OF EXCEPTIONS—*when essential.* What occurred in the presence of the court at the trial of a cause will not be preserved for review by affidavit, but a bill of exceptions must be employed for that purpose.

4. INDICTMENTS—*how cannot be impeached.* Alleged conduct of the judge who presided over the grand jury charged as improper and as affecting the validity of the indictment, cannot be shown by the affidavit of attorneys as to what such judge said to them, nor by affidavits of grand jurors as to what occurred in the grand jury room.

5. INDICTMENTS—*when affidavits of grand jurors competent.* Affidavits of grand jurors as to what occurred during the deliberations of the grand jury are competent to support an indictment.

6. INDICTMENTS—*effect of written motion to quash.* A written motion to quash urging specific grounds, operates to waive points not specifically assigned.

7. INDICTMENTS—*what not essential to validity.* It is not essential to the validity of an indictment that it be signed by the state's attorney.

8. INDICTMENTS—*when motion to quash should not be permitted.* It is improper to permit a motion to quash to be interposed based upon a technical ground after a plea of not guilty has been interposed and the Statute of Limitations has barred the offense charged in the indictment.

9. GRAND JURY—*appropriate method of instructing.* The grand jury should only be instructed in open court; instructions by the judge delivered in the grand jury room are irregular but such irregularity will not vitiate all indictments subsequently rendered by such grand jury and no indictment will be quashed in the absence of a showing of prejudice resulting.

10. JURORS—*when challenge for cause properly overruled.* If the

answer of a juror furnishes ground for challenge for cause, a challenge for cause is properly overruled if such juror by subsequent answers makes it clear that his first answer was given under a misapprehension.

11. LIBEL—*when publication libelous per se.* An article which charges a state's attorney both directly and indirectly with corruption and gross abuse of his office, is libelous *per se.*

12. LIBEL—*what not competent in criminal prosecution.* In a prosecution for a criminal libel a letter addressed to the defendant, written by a witness prior to the publication of the libel, is not competent to show the hostility of the witness, where the witness admits he is hostile.

13. LIBEL—*what not competent to aid construction of.* A defendant should not be permitted to testify to what he meant by the use of certain libelous expressions. The article is to be judged, not by the secret meaning that the writer had in his own mind nor by the meaning which he might afterwards be willing to attribute to it, but by the sense in which ordinary readers of his newspaper would understand it.

14. LIBEL—*what proof not essential in criminal prosecutions.* The burden of proving the falsity of the libelous statements is upon the defendant.

15. LIBEL—*when refusal of instruction as to credibility of defendant not ground for reversal. Held,* under the evidence in this case, that it was not reversible error to refuse to give a correct instruction as to the credibility of the defendant, notwithstanding the substance of such instruction was not contained in any other given instruction.

Prosecution for criminal libel. Error to the Circuit Court of Ogle county; the Hon. JAMES S. BAUME, Judge, presiding. Heard in this court at the April term, 1909. Affirmed. Opinion filed March 11, 1910. Rehearing denied April 13, 1910.

E. E. WINGERT and FRANC BACON, for plaintiff in error.

RALPH E. EATON and W. J. EMERSON, for defendant in error.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

In and after June, 1907, Andrew A. Strauch, plaint-

iff in error, was the editor of a newspaper published in Carroll county, and he wrote and published in the issue of said newspaper for June 26, 1907, an article concerning Franklin J. Stransky, the state's attorney of said county. He published another like article on another date. On November 20, 1907, the grand jury of said county returned an indictment against said plaintiff in error, charging him with a criminal libel against said state's attorney in the writing and publishing of said article. The court then entered an order finding Stransky interested as a witness in said cause and appointing Ralph E. Eaton, an attorney at law, to prosecute said cause. At the March term, 1908, of said court, a motion by plaintiff in error to quash the indictment was heard and denied. Thereafter at said term, on motion of plaintiff in error, the venue of the cause was changed to Ogle county. At the April term, 1908, of the Circuit Court of Ogle county a plea of not guilty was entered, the cause was tried, and the jury disagreed. At the January term, 1909, plaintiff in error asked leave to amend his former motion to quash the indictment, and that motion was heard and denied. Thereafter the attorney for The People elected to prosecute plaintiff in error upon the first, second, third and seventh counts of the indictment, each founded on said article of June 26, 1907. The cause was then tried and plaintiff in error was found guilty as charged in said four counts. Plaintiff in error moved for a new trial, which was denied, and moved in arrest of judgment, which was denied. He was fined $300 and the costs, and ordered to stand committed till fine and costs were paid. Plaintiff in error has sued out this writ of error to review said judgment, and contends that the court erred in refusing to quash the indictment, in refusing leave to amend the motion to quash the indictment, and in certain rulings upon the admission of testimony and upon the giving and refusal of instructions.

The motion to quash the indictment was in writing

and stated the specific grounds, ten in number, upon which the motion was based, viz.: (1) that the matters in the indictment stated did not constitute a crime; (2) that the indictment did not inform plaintiff in error of the nature of the accusation; (3) that the indictment did not constitute due process of law; (4) that the statute under which the indictment was found was contrary to the fourteenth amendment to the Constitution of the United States in certain specified particulars; (5) that the grand jury was not drawn and selected in the manner provided by the statute; (6) that the grand jurors, except the foreman, were not sworn according to law; (7) that before the grand jury was impaneled the grand jurors were approached by persons adverse to plaintiff in error and advised as to the course to pursue to obtain said indictment; (8) that the grand jurors acted from political motives and for personal purposes and not from evidence produced before them; (9) that persons, other than the grand jurors, witnesses, state's attorney and his assistants, strangers to the workings of said grand jury, were present in the grand jury room during the deliberations of the grand jury on this indictment and influenced the grand jury to bring in this indictment; and (10) that the indictment was informal, insufficient and uncertain.

So far as said motion to quash is based upon the form and contents of the indictment no question is presented for our decision, for, although the indictment is exceedingly lengthy, covering seventy-seven closely typewritten pages of the record, and giving a very full statement of all the facts and circumstances to which the libel referred, yet the abstract contains only the word "indictment," and in an index to the abstract a statement of the first and last pages whereon it may be found. Rule 16 of this court, 137 Ill. App. 625, requires the abstract to be sufficiently full to present every question raised. As no part of the indictment is contained in the abstract, we must treat the motion to quash the indictment as properly

overruled, so far as that motion was based upon the form and supposed insufficiency of the indictment.

So far as the motion was based upon the manner in which the grand jury was drawn, selected and sworn, and upon the charge that the grand jurors were approached before they were impaneled, and that they acted from political and personal motives and not from evidence, there is nothing in the record to support these points.

The ninth point is the only one brought before us by the record. Upon that point affidavits were presented in support of and against said motion, and in order to preserve for review the action of the court upon that evidence, it was necessary to take a bill of exceptions, setting out the evidence heard, and an exception to the ruling of the court. The motion to quash was denied on March 6, 1908, but plaintiff in error did not then present a bill of exceptions containing the evidence and an exception to the ruling of the court, nor did he at that term ask leave to do so. The leave to present a bill of exceptions was obtained in the Circuit Court of Ogle county on February 8, 1909, after plaintiff in error had been twice tried and had been convicted and judgment had been pronounced against him. The leave was general, and must be understood to have referred only to the matters occurring during that trial at that term. A party cannot at one term have a bill of exceptions, preserving evidence heard upon some preliminary motion, and an exception to the action of the court thereon, at some former term. Guyer v. D. R. I. & N. W. Ry. Co., 196 Ill. 370; Grand Pacific Hotel Co. v. Pinkerton, 217 Ill. 61, 83; Cella v. C. & W. I. R. R. Co., 217 Ill. 326. It follows that in our opinion the evidence heard upon the motion to quash by the Circuit Court of Carroll county at the March term, 1908, is not properly in this record.

Assuming, however, that this evidence is properly in the bill of exceptions, the most of it is incompetent, and if The People had not presented affidavits, there would have been no competent testimony in support

of the charge.  The claim is that while said grand jury was in session, and before they voted this indictment, the then presiding judge went into the grand jury room and delivered to the grand jury a written charge upon the subject of criminal libel, and that he was in fact prejudiced against plaintiff in error.  To support this charge were the affidavits of the attorneys for plaintiff in error that the judge told them that he went to the grand jury room and there delivered to the grand jury a charge upon the law of criminal libel, and also the affidavits of two grand jurors that the judge came to the grand jury room and delivered such a charge.  The proof of what the judge said to the attorneys was mere hearsay, and was incompetent.  Affidavits of grand jurors cannot be used to impeach any indictment returned by that body.  Gitchell v. People, 146 Ill. 175.  The affidavits of grand jurymen offered by plaintiff in error were therefore incompetent to show any circumstances occurring in the grand jury room which would tend to invalidate the indictment. Affidavits of grand jurors, however, may be received in support of an indictment returned by that body, and The People introduced affidavits of two grand jurors in support of the action taken.  From these affidavits it appears that after the grand jury had heard the evidence upon this charge, but before they had discussed the matter with each other or voted upon the question of finding an indictment, a motion was made by a grand juror, and carried, that the foreman request the presiding judge to attend and instruct the jury as to the law governing criminal libel; that the presiding judge, in response to said request, went to the grand jury room where that body was in session, and there made to them a statement of the law applicable to the subject of criminal libel; that he did not name plaintiff in error or the state's attorney or any person or party, nor did any grand juror name any person to him; that he expressly told the grand jury that he was not referring to any case pending

before them nor to any facts that might be before them in any case, and told them that his instructions only applied in general to the law of criminal libel, and concerned the law only, and had no application to any facts in any case which they might be investigating or might afterwards investigate, and that his instructions, or his presence there, should have no influence upon the grand jury one way or the other in any case which might be pending before them; that said judge did not by word or act manifest any prejudice or bias against any person; that he did not express any opinion in regard to any fact relating to any matter before said grand jury, and that said judge was not present at any time while the grand jury were deliberating or voting upon the question of returning an indictment against plaintiff in error. These affidavits, presented by The People in support of the indictment, bring into the record the fact that the trial judge, at the request of the grand jury, went into the grand jury room and there gave them a general charge upon the law of criminal libel; and plaintiff in error is entitled to whatever result flows from that proof so introduced.

Although the course pursued has the support of Hall v. State, 134 Ala. 90, it will be assumed for the purposes of this decision that it is the meaning of our statute that the grand jury shall be charged by the presiding judge in open court after it has been impaneled and before it retires to the grand jury room to hear evidence and deliberate upon charges presented, and that it was an irregularity for the judge to go to the grand jury room and there deliver a charge to the jury; and that the proper course would have been, upon receiving a request from the grand jury for a charge upon a particular subject, to cause the grand jury to be brought into open court and there deliver the charge. But the fact that an irregularity occurred in a grand jury room is not necessarily a ground for quashing all or any of the indictments returned by that

body at that term. State v. Brewster (Vt.), 42 L. R. A. 444. The material question is whether plaintiff in error was injured or prejudiced by the course pursued, under the facts of this particular case. The cases cited, where a trial judge went to a petit jury room and communicated with the petit jury while it was deliberating upon a case, or sent additional instructions to a petit jury room, are not in point. Each party to a case tried by a petit jury has a right to be present and to be heard at all stages of the proceeding. He has a right to have every communication to the petit jury made in open court, in order that he may be present and may be heard upon any subject presented, and, if additional instructions are to be given upon any subject, may embody and present his views of the law in instructions and request that they be given, and may take exception to all instructions or other communications to the jury which he deems against his interest. Although the grand jury are to be charged in open court and therefore every person who has been bound over to the grand jury or who knows or suspects that a charge against him is to be presented to the grand jury, has a right to be present in open court when the grand jury are to be charged, yet he derives no benefit from that presence. It is assumed by plaintiff in error in argument here that he could have taken and preserved an exception to the charge in this case if it had been delivered in open court. We are not cited to any statute or decision or rule of practice which permits any one to take and preserve any exception to the charge to the grand jury. Even if the charge should erroneously state the law, no advantage of that error can be taken at that time. The only remedy of the accused is to properly present the law after he has been indicted, by motion to quash or at the trial, and to except if the court improperly holds the law against him. If the presiding judge had called this grand jury into open court, there was nothing requiring the court to notify, or secure the attendance of, plaintiff in error, who did not live at the

county seat, and there is nothing to show that he then had counsel, and it is only a remote conjecture that if that course had been pursued plaintiff in error or his counsel might have been present and might have heard the charge. Again, the proofs presented upon this motion did not show that the presiding judge was informed what case it was which caused the grand jury to desire instructions upon the law of criminal libel. The record does not show that this was the only complaint of that kind pending before that grand jury. The proof is clear that no case and no names and no facts were mentioned by any one while the judge was before the grand jury. The charge related generally to the law of criminal libel. The jury were expressly told that the charge had no relation to any facts in any case that might be before them. Again, the presiding judge took the precaution to deliver a written charge. No effort seems to have been made to procure that written charge and to have it embodied in the bill of exceptions. Nothing was proved tending to show that the charge was anything other than a correct statement of the law. It must be assumed under this showing that the judge did state correctly to the jury in general terms the law relating to criminal libel. We see nothing in the competent proofs introduced on this subject which tends in any degree to show that plaintiff in error was or could have been prejudiced by the course pursued. It is worthy of note in this connection that this offense was but a misdemeanor; that no action of a grand jury was needed, but that an information could have been filed in the county court without any action by the grand jury; and that in such a case it is specially proper that a mere irregularity in finding the indictment should not defeat it. McElhanan v. People, 92 Ill. 369. The motion to quash the indictment was heard by a judge other than the one who delivered this charge. We conclude that it was properly overruled.

The motion to quash was overruled on March 6,

1908. On May 5, 1908, after the denial of another dilatory motion, plaintiff in error pleaded not guilty, and he was then tried and the jury disagreed. On January 19, 1909, just before the commencement of the second trial of the cause, plaintiff in error entered a motion for leave to amend his written motion to quash the indictment by adding thereto an eleventh special ground for said motion. The eleventh ground proposed to be added was in writing and very lengthy. The substance of it was that when the grand jury heard the evidence upon which they returned this indictment, the state's attorney was not only a witness against plaintiff in error, but acted in his official capacity as state's attorney and was present when the grand jury deliberated upon the evidence and found the indictment. In support of this motion, plaintiff in error presented an affidavit by one of his counsel in which he stated that the indictment must have been found upon the testimony of the state's attorney or must have been due to his efforts in the grand jury room during the hearing of the evidence and the deliberations of the grand jury upon this case. This was a mere conclusion. Plaintiff in error also called the state's attorney as a witness in support of the motion, and he testified that he signed the indictment; that he testified before the grand jury on this charge; that he was not present when any other witness testified upon this charge, and that he did not act as state's attorney while this charge was heard by the grand jury, and that he did not advise the grand jury as to the law nor say anything to the grand jury as to the facts, except as a witness when called in by the grand jury. The court denied the motion for leave to amend the motion to quash, and that ruling is assigned for error. When this motion was made, heard and denied, there was a plea of not guilty pending. Plaintiff in error did not offer to withdraw the plea of not guilty. The point was specially made that the motion could not be entertained while the plea of not guilty was pending, but still plaintiff in error did not withdraw that plea. The motion was equiva-

lent to a renewal of the motion to quash upon a new ground, and that motion could not be entertained after a plea of not guilty had been interposed without first obtaining leave to withdraw the plea, which leave it would be in the sound judicial discretion of the court to grant or refuse. If the original motion to quash had not been in writing, every point which could be made would have been included. When plaintiff in error put his motion in writing and assigned specific points, we think he should be held to have waived those points which he did not specify and which were not based upon the face of the indictment. It is held in regard to motions for a new trial that the specification of particular grounds is a waiver of all other grounds. Yarber v. C. & A. Ry. Co., 235 Ill. 589, and Chicago City Ry. Co. v. Smith, 226 Ill. 178, and cases there cited. We see no reason why this rule should not apply to a written motion to quash an indictment. The doctrine of waiver is applied in criminal cases. In McKenney v. People, 2 Gilm. 540, 556, a murder case, the court said: "A prisoner on trial, under our laws, has no right to stand by and suffer irregular proceedings to take place, and then ask to have the proceedings reversed on error on account of such irregularities. The law, by furnishing him with counsel to defend him, has placed him on the same platform with other defendants, and if he neglects in proper time to insist on his rights, he waives them." Bulliner v. People, 95 Ill. 394; Graham v. People, 115 Ill. 566; Bruen v. People, 206 Ill. 417; Nagel v. People, 229 Ill. 598; Warren v. Glynn, 37 N. H. 340. This is especially true in misdemeanors. Brewster v. People, 183 Ill. 143; Paulsen v. People, 195 Ill. 507. The matter set forth in the eleventh ground has therefore been waived. Again, the fact that the state's attorney signed the indictment and that he acted as state's attorney at that term of court was as well known to plaintiff in error at the time the motion to quash was made as when the motion to amend was made. As two grand jurors made affidavits in support of the motion to quash, it

is obvious that plaintiff in error could have learned from them at that time what action, if any, in regard to this case, the state's attorney took before the grand jury. If the point had been made in the original motion to quash and had been sustained and the indictment quashed, another indictment could then have been obtained, but when the motion to amend was made, a new indictment could not have been sustained against plaintiff in error because of the statute of limitations. We do not approve of the course pursued in this case. We are of opinion that a special state's attorney should have been appointed before the matter was presented to the grand jury. But the proof presented by plaintiff in error upon the motion to amend showed that the principal allegations of said proposed amendment were not true. The state's attorney did not attend before the grand jury when any witness upon this charge was examined except himself. He did not give the grand jury any advice or instructions upon this case. The only important point stated in the proposed amendment and sustained by the proof is that the state's attorney signed the indictment. That was well known to plaintiff in error when he made the original motion to quash. Its bearing upon the case could not have failed to be known to counsel for plaintiff in error. Plaintiff in error voluntarily waived that point when he omitted it from the grounds set forth in his original motion to quash. The record shows that he was furnished with a copy of the indictment before he entered his plea of not guilty.

But is the signature of the state's attorney essential to the validity of an indictment in this state? Our attention is not called to any constitutional or statutory requirements, or decision by our Supreme Court, that in this state an indictment must be so signed. In 10 Ency. of Pleading & Practice, 446, it is said that at common law the signature of the prosecuting officer was not necessary to the validity of an indictment, and that this is the rule in those states of the Union where such signature is not required by statute; but that it

is a formality in criminal procedure which, from long use, it would be well to follow. To the like effect is 10 Am. & Eng. Encyc. of Law, 1st ed., 505. The authors of the article on Indictments and Informations in 22 Cyc. state their conclusion from many authorities thus, on page 251: "Although the signature of the public prosecutor is usually attached to an indictment, it forms no part of it, and, in the absence of a statute, is in no manner essential to its validity." Many authorities are cited in the three works just referred to. In 1 Bishop's New Criminal Procedure, sec. 702, the rule is stated that the validity of the indictment comes wholly from the grand jury's finding, and no endorsement by counsel for the government is required. In Joyce on Indictments, sec. 447, it is said that, in the absence of a statute, it is not essential to the validity of an indictment that it should be signed by the public prosecutor, but it is sufficient if the indictment is found by the grand jury and endorsed by the foreman. Moore's Criminal Law, 675, note 3, says: "It is usual and customary for the state's attorney to subscribe the indictment, but this is not legally essential to its validity." In State v. Reed, 67 Me. 127, the court said it knew of no rule of the common law and no statute of that state which made such countersigning by the public prosecutor essential to the validity of an indictment. In Commonwealth v. Stone, 105 Mass. 469, where there was a conviction of a misdemeanor under an indictment which was not signed, endorsed or countersigned by the district attorney, the court said: "The usual and proper practice is, that the prosecuting officer shall countersign indictments; but there is nothing in the statutes requiring it, and we do not think it is indispensable to the validity of an indictment. It has been so held in New Hampshire. State v. Farrar, 41 N. H. 53. The bill is to be found by the grand jury and therefore the signature of the foreman is necessary. Webster's Case, 5 Greenl. 432; State v. Squire, 10 N. H. 558; State v. Freeman, 13 N. H. 488. But the prosecuting attorney

acts independently of the grand jury, and not as a part of that body." *In re* Lane, 135 U. S. 443, was *habeas corpus* to release a prisoner convicted in the United States District Court under an indictment signed by an assistant United States attorney. It was held that as the indictment was found by the grand jury, and endorsed as a true bill by the foreman, and filed in open court according to law, there was no error, and certainly none which went to the jurisdiction of the court. In Cross v. People, 66 Ill. App. 170, we affirmed a judgment of conviction of a misdemeanor, where the indictment was not signed by the state's attorney, holding that at most the signing by the state's attorney was a mere matter of form, and that it was waived by a failure to move to quash the indictment. An examination of the common law and statutory forms of indictments will show that they do not profess to be the act or presentment of the state's attorney. They are the presentment of the grand jury, attested by the endorsement of their foreman. The purpose of the signature of the state's attorney seems to be to show the grand jury that he has prepared the instrument, and approves and vouches for the correctness of its form. His signature does not make it an indictment. It becomes an indictment when the prescribed number of grand jurors have agreed to the finding, and an endorsement "a true bill" thereon has been signed by the foreman, and the grand jury has presented the instrument in open court. We therefore conclude that not only was it proper to refuse to permit plaintiff in error to raise this point for the first time after a plea of not guilty and after the statute of limitations had run against the offense, but also that the indictment is not defective because not signed by a specially appointed and disinterested prosecutor.

The article upon which the first, second, third and seventh counts are based is too lengthy to be reproduced here: We think it unnecessary to extend this opinion by analyzing the different charges and insinu-

ations therein made against the state's attorney of Carroll county concerning his acts and omissions in his official capacity. We deem it sufficient to say that, partly in direct language and partly by thinly veiled insinuation, it accuses him of favoritism, of prosecuting some offenders and screening others of the same class who were equally guilty; of causing himself to be employed to assist in the prosecution of the bridge trust in another county for the purpose of becoming so possessed of the facts concerning the unlawful methods of said bridge trust that he could compel the bridge trust to bribe him not to prosecute it in Carroll county; that in consequence thereof he had been richly remunerated by the bridge trust and that therefore it would not be prosecuted in Carroll county. It is clear that it in many ways charged the state's attorney, both directly and by insinuation, with gross abuse of his office of state's attorney. It was therefore libelous *per se.* If those allegations were true, that was an affirmative defense to be proved by the plaintiff in error. Fuller v. People, 141 Ill. App. 374, 238 Ill. 116. There is no evidence whatever of the truth of any of these charges. It was admitted that plaintiff in error wrote and published the article; it attributed to the state's attorney gross misconduct in office, and was clearly libelous; and no effort was made to prove that the allegations were true. Plaintiff in error therefore was admitted to be guilty, and no defense was attempted. The sentence was mild, considering the gravity of the charges. No slight inaccuracies at the trial ought to disturb the verdict.

During the trial the state's attorney was a witness on behalf of the prosecution, and, on cross-examination, he was shown an open letter addressed to plaintiff in error, which he admitted he wrote and caused to be published some eight months before the publication by plaintiff in error here complained of. Plaintiff in error offered that letter in evidence, and the court

sustained an objection to the offer. The letter was published long before the publication here complained of. It did not relate to the same subject-matter. If this had been a civil suit by the state's attorney to recover damages from plaintiff in error, it may be it would have been admissible in mitigation of damages only. If in this criminal case it had been the duty of the jury to fix the punishment, it may be it should have been admitted on the ground that it might be considered by the jury as constituting such provocation as would require a lesser punishment than would otherwise be inflicted. But the jury were only authorized to determine the guilt or innocence of plaintiff in error. The open letter in question had no tendency to show the defendant's innocence. It could not authorize his acquittal. There was only one purpose for which it could be competent. The state's attorney had been a witness for The People and if he had claimed to be not unfriendly to plaintiff in error, this letter would have been competent to show that he was hostile to plaintiff in error. But he admitted that hostility on cross-examination before this letter was offered, and that, while he had not been friendly with plaintiff in error since he learned of the connection of plaintiff in error with the bridge trust (Strauch v. People, 144 Ill. App. 283; People v. Strauch, 240 Ill. 60), still he did not like plaintiff in error before that. After this admission by the state's attorney on cross-examination, we think the court was not obliged to admit the open letter in evidence for the purpose of showing that the witness was unfriendly to the plaintiff in error. The open letter related to many different subjects and was couched in terms which were bitter, unless the charges of the open letter were true. It could hardly have been avoided that the introduction of the letter would have been followed by an effort to prove the truth of its allegations so as to ascertain the extent of the hostility to plaintiff in error exhibited thereby. This letter shows on its face that it was in answer to a prior

letter from plaintiff in error to the state's attorney. The offer of that prior letter would have followed, and would have been apt to lead the case far from the case actually on trial. Davison v. People, 90 Ill. 221. We are of opinion that the court did not err in refusing to admit the letter. Plaintiff in error was asked by his counsel to state what he meant by one of the expressions contained in his publication of June 26, 1907. The court sustained an objection to the question. The article was to be judged, not by the secret meaning which the writer had in his own mind nor by the meaning which he might afterwards be willing to attribute to it, but by the sense in which ordinary readers of his newspaper would understand it. But if he should have been permitted to answer the question, that ruling alone should not reverse the judgment, for this was only one of many libelous expressions in the article.

It is contended that most of the instructions given at the request of The People were erroneous and that most of the instructions requested by the plaintiff in error, which the court refused, should have been given. A reading of all the instructions given, as one entire charge, satisfies us that the law was laid down with substantial accuracy and that the court gave to the jury everything to which the plaintiff in error was entitled, unless it be the proposition contained in refused instruction No. 14. Some of the instructions requested by plaintiff in error and refused were embodied in others which were given. Others of the refused instructions sought to cast upon The People the burden of proving the falsity of the libelous statements, whereas their truth was an affirmative defense and to be proved by plaintiff in error, as held in Peopre v. Fuller, *supra*. Several of the refused instructions sought to single out fragments of the article, detached from the context. Others still were so plainly incorrect as not to require any discussion. The fourteenth refused instruction stated that plaintiff in

error was a competent witness in his own behalf and that his testimony should not be discredited from caprice or because he was the party charged, but that his testimony was to be treated the same as any other witness and subjected to the same tests legally applied to other witnesses, and that, while the jury had the right to consider his interest in the result, yet they also had the right and duty to take into consideration the fact, if such was the fact, that he had been corroborated by other credible evidence or by facts and circumstances proved on the trial. Plaintiff in error was a witness in his own behalf and this instruction was a correct statement of the law applicable generally to the testimony of a party, and it was not embodied in any given instruction. But plaintiff in error did not testify to any material facts. He testified to nothing which could have influenced the verdict. He was not corroborated in any material part of his testimony upon any point in dispute by any other evidence or by facts and circumstances proved on the trial. The substance of his testimony was only that a few isolated charges, the least serious of those contained in the article, were published by him in good faith. His good faith was not material, unless the charges were also true, and even if he had been acquitted as to those isolated charges referred to in the testimony of plaintiff in error, he must still have been convicted upon the other defamatory charges contained in the article. We therefore conclude that it was not reversible error to refuse instruction No. 14, although the instruction was approved under different circumstances in McElroy v. People, 202 Ill. 473, and Schultz v. People, 210 Ill. 196.

Upon the motion for a new trial it was contended that the court erred in overruling a challenge by plaintiff in error of the juror Hornicke. An affidavit set forth that said juror was asked what the form of his verdict would be if after hearing the evidence he had a reasonable doubt ''of the sufficiency of the proof

showing his guilt beyond a reasonable doubt,'' and he answered "as I understand it 'guilty'.'' He was then asked whether he would find plaintiff in error guilty or not guilty if the evidence should preponderate in favor of The People, but should not be sufficient to satisfy the juror of the guilt of plaintiff in error beyond a reasonable doubt, and he answered, "Not guilty, I should think.'' Then followed the challenge for cause, which the court denied. It is evident that the first answer was given from a misapprehension of a somewhat involved question, and that the second answer removed all ground for challenge. The court properly overruled the challenge. Plaintiff in error then challenged the juror peremptorily and he did not sit in the trial. Moreover, the trial judge does not certify that these questions were put, these answers made, a challenge for cause overruled, and that plaintiff in error excepted. These alleged occurrences were shown only by affidavit, filed in support of a motion for a new trial. That which occurred in the presence of the court at the trial cannot be preserved for review by affidavit. Peyton v. Village of Morgan Park, 172 Ill. 102; Gallagher v. People, 211 Ill. 158, 171; C. R. I. & P. Ry. Co. v. Ross, 136 Ill. App. 518.

We find no reversible error in the record and the judgment is therefore affirmed.

*Affirmed.*